UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

MAGGIE FRANKLIN,

NO. CIV. 07-1263 WBS GGH

      Plaintiff,

MEMORANDUM AND ORDER RE: MOTION
FOR SUMMARY JUDGMENT

   v.

SACRAMENTO AREA FLOOD CONTROL
AGENCY, a public entity, CITY OF
SACRAMENTO, a public agency,

      Defendants.

_____/

----oo0oo----

     Plaintiff Maggie Franklin filed this action against
defendants Sacramento Area Flood Control Agency ("SAFCA") and the
City of Sacramento ("City") alleging racial discrimination,
retaliation, and wage violations during her tenure as the Public
Information Officer ("PIO") of SAFCA in violation of state and
federal law.  Defendants now move for summary judgment on all
claims.

I.   Factual and Procedural Background

     In October 2000, plaintiff, who is African American,

1

moved from Toledo, Ohio, to California to start work as the PIO

of SAFCA.  (Defs.' App'x Ex. B ("Hodgkins Decl.") ¶ 2; Pl.'s

App'x Ex. 26 ("Franklin Decl.") ¶ 10.)  SAFCA is a joint powers

agency, created by the City and other public entities, that

partners with state and federal agencies to construct levees and

implement flood control measures.  (Defs.' App'x Ex. A ("Buer

Decl.") ¶ 1.)  When plaintiff interviewed for her position and

started work, Francis "Butch" Hodgkins ("Hodgkins") served as the

Executive Director of SAFCA.  (Hodgkins Decl. ¶ 1.)

        SAFCA is a fairly small agency consisting of about

twelve personnel (Buer Decl. ¶ 4), and plaintiff was the first

person to serve as PIO (see Hodgkins Decl. ¶ 6).  The PIO

position was created in 1999 by a contract between the City and

SAFCA in which the City agreed to establish a position on its

payroll to be filled by a candidate of SAFCA's choosing.  (See

Defs.' Ex. H ("PIO Agreement") § 1; Hodgkins Decl. ¶ 3.)[1]  The

---

[1]     Plaintiff has filed one-hundred and defendants have
filed sixteen purported evidentiary objections to the materials
submitted in support of the parties' respective positions.  The
bulk of these so-called objections are frivolous and do not even
raise cognizable arguments under the Federal Rules of Evidence,
and many consist simply of argument on the merits of the motion.
(See, e.g., Pl.'s Objections No. 36 (objecting to declarant's
statement on the grounds that it is based on the declarant's
"unlawfully discriminatory beliefs"); id. No. 67 (objecting to
declarant's statement as "demonstrably false").)  To the extent
that the objections concern evidence not relied upon, they are
moot.  The court will address only those specific objections
raising cognizable evidentiary objections to material relied upon
in the court's analysis.
        Here, plaintiff objects to the PIO Agreement on the
grounds of lack of foundation and hearsay.  (Pl.'s Objection No.
90.)  The objection is overruled.  Hodgkins, who signed the
Agreement, had sufficient familiarity with the document to lay a
proper foundation.  (Hodgkins Decl. ¶ 3.)  The contract is not
hearsay as it is only considered as evidence of a promise, not
for the truth of the matters asserted therein.

2

PIO Agreement provided that the PIO would be a SAFCA employee for all purposes except payment and benefits, that SAFCA would provide supervision and work space, and that the SAFCA Executive Director would determine the PIO's exact compensation within City ranges and steps. (PIO Agreement §§ 1, 3.)

As PIO, plaintiff organized and coordinated SAFCA's public communications plan. (Franklin Decl. ¶ 61; Buer Decl. ¶ 8.) Her responsibilities included designing and maintaining the SAFCA website, making presentations to community groups and others, planning and coordinating community events, and acting as a liaison between SAFCA and other public entities and officials. (Franklin Decl. ¶ 61.) At some point early in plaintiff's employment, Hodgkins decided that she would manage only SAFCA's community relations, while all government relations duties would be assigned to an outside consultant, Barbara Gualco ("Gualco") (Pl.'s App'x Ex. 23 ("Hodgkins Dep.") 17:18-25), who is not African American (Franklin Decl. ¶ 58).

Shortly after she began work at SAFCA, plaintiff objected to the language used in the office. She complained to Hodgkins about the pervasive use of profanity by SAFCA personnel, including by Hodgkins himself. (Id. ¶ 28.) Hodgkins agreed to address this issue, but plaintiff did not observe a significant reduction. (Id. ¶¶ 29-30.) In addition, plaintiff, the only African American at SAFCA for the entirety of her employment (id. ¶ 2), alleges that she overheard Julie Lienert ("Lienert"), the office administrator, refer to her as a "black bitch" on one occasion. (Pl.'s App'x Ex. 15-16 ("Franklin Dep.") 88:10-11.) Lienert also allegedly once called plaintiff a "lazy nigger"

3

outside of plaintiff's presence, though the specific timing of the statement is not clear. (See Pl.'s App'x Ex. 24 ("Squaglia Dep.") 18:19-19:8 (testifying that the statement was made some time between May 2002 and April 2003).)

At the end of plaintiff's first six months, Hodgkins conducted an evaluation of plaintiff in which he told her that she "did not fit in," that the other managers in the office considered her "uppity," and that she should do more "menial tasks." (Franklin Decl. ¶¶ 42-45.) He then denied plaintiff the six-month raise described to her at the time of her hiring. (Id. ¶ 48; Pl.'s App'x Ex. 7 ("Employment Letter") at 1; Hodgkins Dep. 72:12-14.) In response, plaintiff filed a charge of discrimination with the City on May 18, 2001, alleging that Hodgkins and Lienert subjected her to discrimination on account of her race. (Pl.'s App'x Ex. 10 at 1-2.) As a result of a mediation between plaintiff and Hodgkins, he agreed to award plaintiff her six-month raise and to hold cultural diversity training for the office. (See Franklin Decl. ¶ 50; Hodgkins Dep. 39:24-25, 70:15-18.) Plaintiff received the raise but Hodgkins never held the diversity training. (Franklin Decl. ¶¶ 51, 53.)

Thereafter, beginning in June 2001, Hodgkins required plaintiff to account for her time and submit time sheets to City payroll. (See id. ¶ 31.) Hodgkins questioned the accuracy of plaintiff's time sheets, though he did not do so for other SAFCA workers who also had to submit time sheets to the City. (Pl.'s App'x Ex. 20 ("Ceragioli Dep.") 65:20-25.) Plaintiff had to complete time sheets for the duration of her employment, and she was docked either leave time or pay for partial-day absences.

4

(See Franklin Dep. 135:17-22, 290:8-9.)

In July 2004, Stein Buer ("Buer") succeeded Hodgkins as the SAFCA Executive Director. (Buer Decl. ¶ 1.) Hodgkins told Buer that plaintiff performed poorly and that she had made a charge of discrimination against him in 2001. (Buer Dep. 116:1-20.) Plaintiff also mentioned the 2001 charge to Buer at an introductory meeting and requested that Buer schedule the cultural diversity training. (Franklin Decl. ¶ 75.) Plaintiff alleges that Buer stated in that conversation that he could not work with someone who filed a claim of racial discrimination against him. (Id. ¶¶ 76-77.) When plaintiff responded that his statement sounded like retaliation, Buer purportedly said, "It's not retaliation, it is a fact." (Id. ¶¶ 78-79.) Buer also stated that he did not think it was his responsibility to hold the diversity training. (Franklin Dep. 116:3-5.)

Then, at some point in the following year, plaintiff informally complained to Buer that she believed he was discriminating against her on account of race. The informal complaint concerned Buer's reassignment of the management of the American River Flood Plain Announcement, a significant public event involving Congressman Matsui, to Gualco. (Franklin Decl. ¶ 116; Buer Dep. 88:5-20.) Buer responded that plaintiff should make a formal charge if she believed he had discriminated against her, but plaintiff did not file a formal complaint at that time. (Franklin Decl. ¶ 119; Buer Decl. ¶ 59.)

On August 3, 2006, Buer provided plaintiff with his first formal evaluation of her performance. (Buer Decl. ¶¶ 30-31.) Buer gave plaintiff a negative review, citing low-quality

written work, low productivity, and poor responsiveness to Buer's assignments. (See Buer Decl. ¶ 32; Franklin Decl. ¶ 143; Defs.' App'x Ex. P.) Plaintiff disputed Buer's assessment and accused him of racial discrimination. (See Defs.' App'x Ex. R at 6.) Buer requested that the City investigate plaintiff's allegations. (Buer Decl. ¶ 34; Defs.' App'x Ex. Q.)[2] On November 2, plaintiff emailed Buer a courtesy copy of a purported California Department of Fair Employment and Housing complaint alleging that Buer had discriminated and retaliated against her. (Pl.'s App'x Ex. 13; Franklin Decl. ¶ 148.) Some time in late October or early November, Buer learned that the City's investigator concluded that he had not discriminated against plaintiff. (See Buer Decl. ¶ 51; Edmonson Decl. ¶ 5.)[3] He thereafter terminated plaintiff on November 8, 2006. (Buer Decl. ¶ 53; Franklin Decl. ¶ 168.) SAFCA did not hire a new PIO. (Buer Decl. ¶ 56.)

Plaintiff filed the instant action on June 26, 2007, and filed her First Amended Complaint ("FAC") on June 16, 2008. The FAC asserts nine claims against SAFCA and the City. The

---

[2] The court overrules plaintiff's objection to the email in which Buer requested the City's investigation on the grounds of lack of foundation and hearsay. (Pl.'s Objection No. 95.) Buer, who wrote and sent the email, laid a proper foundation. (Buer Decl. ¶ 34.) The email is not hearsay, as it considered for the fact that it was sent, not for the truth of the assertions it contains.

[3] The court overrules plaintiff's objection to Buer's and Susan Edmonson's statements concerning the results of the investigation on the grounds of lack of personal knowledge, hearsay, and the best evidence rule. (Pl.'s Objection Nos. 46, 81.) The results of the investigation and Buer's receipt of the news are not hearsay as they are considered for their effect on Buer, not for the purpose of establishing the accuracy of the investigation. Moreover, because the statements are not considered to prove the contents of the investigation, the best evidence rule is not implicated.

first and second claims allege racial discrimination in violation
of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-2,
and the Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code
§ 12940(a), respectively; the third and fourth claims allege
retaliation for complaints about discrimination in violation of
Title VII, 42 U.S.C. § 2000e-3, and FEHA, Cal. Gov't Code §
12940(h), respectively; the fifth claim alleges a failure to
prevent discrimination or retaliation in violation of FEHA, Cal.
Gov't Code § 12940(k); the sixth and seventh claims allege the
failure to pay wages in violation of the California Labor Code,
Cal. Lab. Code §§ 510, 515, and the Fair Labor Standards Act
("FLSA"), 29 U.S.C. § 207(a)(1), respectively; and the eighth and
ninth claims allege retaliation for complaints about the failure
to pay wages in violation of the California Labor Code, Cal. Lab.
Code § 98.6, and the FLSA, 29 U.S.C. § 215(a)(3), respectively.

II.  Discussion

     A.  Standard of Review

          Summary judgment is proper "if the pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c).  A material fact is one that could affect
the outcome of the suit, and a genuine issue is one that could
permit a reasonable jury to enter a verdict in the nonmoving
party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
248 (1986).  The moving party bears the burden of demonstrating
the absence of a genuine issue of material fact.  Id. at 256.  On
issues for which the ultimate burden of persuasion at trial lies

7

with the nonmoving party, the moving party bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the nonmoving party's case or by demonstrating that the nonmoving party cannot produce evidence to support an essential element of its claim or defense. <u>Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party carries its initial burden, the nonmoving party "may not rely merely on allegations or denials in its own pleading," but must go beyond the pleadings and, "by affidavits or as otherwise provided in [Rule 56,] set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); <u>accord</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986); <u>Valandingham v. Bojorquez</u>, 866 F.2d 1135, 1137 (9th Cir. 1989). On those issues for which it will bear the ultimate burden of persuasion at trial, the nonmoving party "must produce evidence to support its claim or defense." <u>Nissan Fire</u>, 210 F.3d at 1103.

In its inquiry, the court must view any inferences drawn from the underlying facts in the light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). The court also may not engage in credibility determinations or weigh the evidence, for these are jury functions. <u>Anderson</u>, 477 U.S. at 255.

B. <u>Racial Discrimination</u>

Claims of racial discrimination under Title VII are evaluated pursuant to the burden-shifting framework of <u>McDonnell</u>

8

_Douglas Corp. v. Green_, 411 U.S. 792 (1973), which involves a three-step process.  Claims pursuant to FEHA are subject to that same analysis.  _Bradley v. Harcourt, Brace & Co._, 104 F.3d 267, 270 (9th Cir. 1996); _see_ _Guz v. Bechtel Nat. Inc._, 24 Cal. 4th 317, 354 (2000) ("Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes.").

Under the _McDonnell Douglas_ framework, plaintiff must first establish a prima facie case showing that 1) she belongs to a protected class of persons; 2) she satisfactorily performed her job; 3) she suffered an adverse employment action; and 4) her employer treated her differently than similarly situated employees not of the same protected class.  _Cornwell v. Electra Cent. Credit Union_, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing _McDonnell Douglas_, 411 U.S. at 802).  Then, if plaintiff successfully establishes her prima facie case, the "burden of production, but not persuasion, [] shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action."  _Chuang v. Univ. of Cal. Davis_, 225 F.3d 1115, 1123-24 (9th Cir. 2000) (citing _McDonnell Douglas_, 411 U.S. at 802).

Finally, assuming the employer carries its burden, plaintiff, in order to survive summary judgment, "must [then] show that the articulated reason[s] [are] pretextual 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'"  _Chuang_, 225 F.3d at 1124 (citing _Tex. Dep't of Cmty. Affairs v._

9

Burdine, 450 U.S. 248, 256 (1981)).  To satisfy this burden,

plaintiff "must produce some evidence suggesting that [the

employment action] was due in part or whole to discriminatory

intent, and so must counter [defendants'] explanation."

McGinest, 360 F.3d at 1123.[4]

Here, the parties do not contest the first three

elements of plaintiff's prima facie case.  It is undisputed that

plaintiff, as an African American, belongs to a protected class.

In addition, plaintiff's own assertion of adequate performance

and evidence of positive assessments from others in her field

(Franklin Decl. ¶¶ 4, 32; Pl.'s App'x Ex. 28 ("Taylor Dep.")

52:8-13) satisfies the second element.  See Aragon v. Republic

Silver State Disposal, Inc., 292 F.3d 654, 660 (9th Cir. 2002)

(holding that even an employee's self-assessment was sufficient

to establish a prima facie case).

With respect to the third element of plaintiff's prima

facie case, "an adverse employment action is one that 'materially

affect[s] the compensation, terms, conditions, or privileges of .

. . employment.'"  Davis v. Team Elec. Co., 520 F.3d 1080, 1089

(9th Cir. 2008) (quoting Chuang, 225 F.3d at 1126) (alterations

in original); see Fonseca v. Sysco Food Servs. of Ariz., Inc.,

374 F.3d 840, 847 (9th Cir. 2004) ("We define 'adverse employment

_____

[4]    Earlier case law suggests that a plaintiff who relies
on circumstantial evidence to show pretext must produce
"specific" and "substantial" evidence.  See e.g., Godwin v. Hunt
Wesson, Inc., 150 F.3d 1217, 1222 (9th Cir. 1998).  Those cases
have been questioned in light of the Supreme Court's decision in
Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003), in which the
Court affirmed the sufficiency of circumstantial evidence.  See
Cornwell, 439 F.3d at 1030-31 (citing McGinest with approval and
questioning the continued viability of Godwin).

action' broadly." (citing <u>Ray v. Henderson</u>, 217 F.3d 1234, 1241 (9th Cir. 2000))). Plaintiff has submitted evidence of two adverse employment actions that fit squarely within this definition: her termination and instances of compensation reduction.[5]

### 1. <u>Termination</u>

To satisfy the fourth element of a prima facie case for discriminatory termination, a plaintiff ordinarily must show that the employer sought a replacement following the termination. <u>See</u> <u>Pejic v. Hughes Helicopters, Inc.</u>, 840 F.2d 667, 672 (9th Cir. 1988). The prima facie case, however, "[is] not intended to be an inflexible rule." <u>Furnco Const. Corp. v. Waters</u>, 438 U.S. 567, 575 (1978). Instead, the purpose of the prima facie case is to "eliminate[] the most common nondiscriminatory reasons" for the adverse employment action. <u>Burdine</u>, 450 U.S. at 254. In <u>Pejic</u>, for example, the court required the plaintiff to show that the employer sought a replacement as a means of "demonstrating a continued need for the same services and skills." 840 F.2d at 672.

Here, it is undisputed that SAFCA did not hire a new PIO. (Buer Decl. ¶ 56.) Nonetheless, plaintiff's former duties were reassigned to existing staff (<u>id.</u>), none of whom were

---

[5] Plaintiff identifies a variety of other instances of negative treatment, including denial of annual raises (Franklin Decl. ¶¶ 65, 90), failure to provide annual performance reviews (<u>id.</u> ¶ 90), and denial of opportunities to attend off-site conferences and certain staff meetings (<u>id.</u> ¶¶ 123-24; Buer Decl. ¶ 39). However, she has failed to establish a prima facie case with respect to these actions because there is no indication that non-African-Americans were treated any differently.

African American (Franklin Decl. ¶ 2). In addition, even before plaintiff's termination, some of her duties had already been assigned to Gualco, who is also not African-American. (Franklin Decl. ¶ 58). Under these circumstances, plaintiff has adequately shown that SAFCA had a continuing need for the services she provided and that non-African-Americans provided those services following her termination. Plaintiff has thus established her prima facie case.

The burden thus shifts to defendants to articulate legitimate reasons for plaintiff's termination. Defendants contend that Buer fired plaintiff because she performed poorly in her position as PIO and did not meet Buer's expectations. (Defs.' Mem. Supp. Summ. J. 17:17-23.) Buer specifically identifies two examples from 2006, one in which he discussed updating an informational animation of Folsom Dam and another in which he gave plaintiff a list of problems with the SAFCA website that needed to be corrected. (See Buer Decl. ¶¶ 20, 27; Defs.' App'x Ex. N.)[6] With regard to the Folsom Dam animation, plaintiff never produced a project proposal, contrary to Buer's expectations. (Buer Decl. ¶ 20.) As for the website, Buer states that plaintiff had not addressed many of Buer's identified concerns over four months after he raised them. (Id. ¶ 27.)

More generally, Buer believed plaintiff lacked the initiative of an effective project manager, showed low productivity compared to other managers, and produced poor

---

[6] The court overrules plaintiff's objection to the list of problems with the website on hearsay grounds. (Pl.'s Objection No. 25.) The list is not hearsay, as it is only considered for its effect on plaintiff.

quality written work that required substantial editing before
publication to the public.  (Id. ¶¶ 20, 26.)  With respect to the
transfer of responsibilities to Gualco, Buer states that
management of the American River Flood Plain Announcement was
assigned to Gualco only once Congressman Matsui agreed to
participate, as his participation changed the nature of the event
from community relations to government relations.  (Buer Decl. ¶
58.)

Under the McDonnell Douglas framework, the burden
shifts back to plaintiff to identify evidence "suggesting that
[the employment action] was due in part or whole to
discriminatory intent, and so must counter [defendants']
explanation."  McGinest, 360 F.3d at 1123.  The record provides
little evidence indirectly challenging defendants' articulated
reasons as pretextual.  James Taylor ("Taylor"), who worked as
the chief of the public affairs office for the Army Corps of
Engineers, thought plaintiff "did a very good job" as PIO of
SAFCA.  (Taylor Dep. 5:2-4; 52:8-9.)  His office worked with
plaintiff while she was PIO to set up at least four public
meetings and create the supporting brochures and fact sheets for
those meetings.  (Id. 39:11-17.)  He stated that he would hire
plaintiff.  (Id. 56:16.)

Taylor's opinion, based on his limited interactions
with plaintiff, does not squarely call into question Buer's
assessment of plaintiff's performance.  As an outsider to SAFCA,
Taylor did not have an opportunity to observe plaintiff's conduct
in the areas Buer found lacking, particularly her response to new
assignments, her initiative, and her overall productivity.

13

Moreover, though Taylor did review written materials that plaintiff produced, Buer's assessment of plaintiff's work quality concerned her work product before it underwent editing for public distribution outside SAFCA. The opinion of a SAFCA outsider, even one familiar with plaintiff's field of expertise, does not render Buer's reasons for plaintiff's termination "'unworthy of credence' because [they are] internally inconsistent or otherwise not believable." <u>Chuang</u>, 225 F.3d at 1127 (quoting <u>Godwin v. Hunt Wesson, Inc.</u>, 150 F.3d 1217, 1220-22 (9th Cir. 1998)).

Furthermore, the evidence fails to directly challenge defendants' reasons by suggesting discriminatory intent more likely motivated the termination. Taking inferences in favor of plaintiff, the two instances of racially charged language allegedly used by Lienert--calling plaintiff a "lazy nigger" to another coworker (Squaglia Dep. 18:19-22) and referring to plaintiff as a "black bitch" (Franklin Dep. 88:10-11)--still do not support an inference of racial animus in the termination, as there is no indication that Lienert played any role in the termination decision. <u>See</u> <u>Kennedy v. Schoenberg, Fisher & Newman, Ltd.</u>, 140 F.3d 716, 724 (7th Cir. 1998) (holding that discriminatory remarks by a supervisor who was not a decision maker in the termination did not serve as evidence of discriminatory intent). In addition, because Hodgkins also did not participate in the termination decision, his statements during plaintiff's sixth-month evaluation similarly fail to raise an inference of discrimination.

As for statements made by Buer, plaintiff identifies an incident during an introductory meeting between Buer and

plaintiff in 2004 in which Buer told plaintiff that he could not work with someone who filed a racial discrimination claim against him. (Franklin Decl. ¶¶ 76-77.) Buer's statement, though relevant to his intent to retaliate against protected activity, see infra section C, is not indicative of racial animus in the decision to discharge plaintiff two years later. See Nidds v. Schindler Elevator Corp., 113 F.3d 912, 919 (9th Cir. 1996) (holding that an ambiguous comment about "old timers" not linked to the adverse employment action was not sufficient to support an inference of age discrimination).

The lapse of time between Buer's other acts of negative treatment toward plaintiff and her termination also weakens any indication of discriminatory intent. That Buer assigned some of plaintiff's responsibilities to Gualco, a non-African American, over a year before her termination does not suggest racial animus, especially in light of the fact that SAFCA had an existing relationship with Gualco before Buer's tenure at SAFCA. Similarly, the amount of time between plaintiff's discharge and the fact that Buer, upon becoming Executive Director in 2004, did not order cultural diversity training for the SAFCA office (see Franklin Dep. 116:3-5) also dispels any reasonable inference that Buer more likely terminated plaintiff on account of her race rather than for defendants' articulated reasons.

Ultimately, this loose collection of incidents and statements is insufficient to create a genuine issue of material fact concerning discriminatory intent in plaintiff's termination. Accordingly, defendants are entitled to summary judgment on plaintiff's first and second claims with respect to her

15

termination.

2. <u>Compensation Reductions</u>

Plaintiff has successfully established her prima case for her compensation reductions. In her deposition, plaintiff states that her pay and leave time were docked because she was required to account for fractions of an hour spent outside the office during working hours. (Franklin Dep. 290:3-9.) Hodgkins began this practice as early as June 2001. (Franklin Decl. ¶ 31.) Evelyn Ceragioli, who served for a period as a secretary at SAFCA, testified in her deposition that she did not see Hodgkins question the accuracy of anyone's time sheets but plaintiff's. (Ceragioli Dep. 65:20-25.) Further, she testified that it was common practice for Tim Washburn, another SAFCA worker who had to submit time sheets to the City, to report forty hours of work per week even on weeks in which he had partial-day absences. (<u>Id.</u> 23:24-25.) Plaintiff has thus shown that, because of disparate enforcement of the timekeeping rules, she suffered compensation reductions that non-African-Americans did not.

Defendants must therefore articulate legitimate reasons for this apparent unequal enforcement of timekeeping. Defendants contend that plaintiff was subject to the City's leave policy (Defs.' Mem. Supp. Summ. J. 19:4-13), which required City managers to account for even partial day absences. (Contreras Decl. ¶ 5; Sutherland Decl. ¶¶ 8-9). Furthermore, the City Director of Labor Relations and a City payroll technician state that the payroll department subjected the two other City managers

16

at SAFCA to the same leave policy.[7] (Contreras Decl. ¶ 2; Sutherland Decl. ¶¶ 6-7.) Buer also provides that he enforced this leave policy on all three City managers at SAFCA (Buer Decl. ¶ 25), and those managers confirm that Buer reviewed their time sheets (Defs.' App'x Ex. F ¶ 3; id. Ex. G ¶ 3).

These articulated reasons fail to rebut the presumption of discrimination created by plaintiff's prima facie case. Although plaintiff's prima facie case established that she was subject to disparate enforcement of the timekeeping policy as early as June 2001, defendants' supporting evidence only addresses the enforcement of that policy under Buer, who became Executive Director in 2004. Even evidence of the City's leave policy relies upon a City Council resolution dated June 24, 2006. (See Contreras Decl. ¶ 3 (stating that plaintiff's employment was controlled by the terms of a June 24, 2006 City Council resolution); Defs.' App'x Ex. AA ("Personnel Resolution").)[8] In the absence of evidence of a reason for the disparate enforcement of the timekeeping policy that resulted in plaintiff's reduced compensation, the court will "presume these acts, [] otherwise unexplained, are more likely than not based on the consideration

_____

[7]     The court overrules plaintiff's objections to the description of the payroll system on the grounds of lack of personal knowledge. (Pl.'s Objection Nos. 67-69.) Cheryl Sutherland, a City payroll technician, has personal knowledge of how the payroll system is maintained.

[8]     The court overrules plaintiff's objections to the Personnel Resolution on the grounds of lack of foundation and hearsay. (Pl.'s Objection Nos. 63-65.) Dorothea H. Contreras, the City Director of Labor Relations, sufficiently laid the foundation for a document that she uses in the course of her duties. (Contreras Decl. ¶ 3.) The Personnel Resolution qualifies for the business records exception to hearsay.

17

of impermissible factors." <u>Furnco Constr. Co.</u>, 438 U.S. at 577 (citing <u>Teamsters v. United States</u>, 431 U.S. 324, 358 n.44 (1977)).

Accordingly, a genuine issue of material fact exists with respect to the defendants' discriminatory intent, and the court must deny summary judgment to defendants on plaintiff's first and second claims with respect to plaintiff's compensation reductions.

### 3. <u>Hostile Work Environment</u>

Plaintiff's first and second claims also allege that defendants subjected plaintiff to a hostile work environment on account of her race. To prevail, plaintiff must show 1) that she was subjected to verbal or physical conduct of a racial nature, 2) that the conduct was unwelcome, and 3) that the conduct was sufficiently severe or pervasive to alter the conditions of the her employment and create an abusive work environment. <u>Vasquez v. County of L.A.</u>, 349 F.3d 634, 642 (9th Cir. 2003) (citing <u>Gregory v. Widnall</u>, 153 F.3d 1071, 1074 (9th Cir. 1998)). Plaintiff must show "that [her] workplace was 'both objectively and subjectively offensive.'" <u>Nichols v. Azteca Rest. Enter., Inc.</u>, 256 F.3d 864, 871 (9th Cir. 2001) (quoting <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 787 (1998)). In this analysis, the court may consider factors such as "the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 22 (1993).

Plaintiff has failed to create a genuine issue of fact

18

as to whether any racial conduct toward her was sufficiently severe to sustain her hostile work environment allegations. Only two clearly racist remarks were made during plaintiff's employment, and one of them, Lienert's "lazy nigger" comment, was not even made in plaintiff's presence. (Squaglia Dep. 18:19-22.) In addition, there is evidence of only two other instances of arguably offensive statements--Hodgkins' comment that others perceived plaintiff as "uppity" and Buer's statement that he could not work with anyone who filed a racial discrimination claim against him.[9] Neither of these comments appear to be racial. In total, the record only contains evidence of four offensive comments in plaintiff's six years of employment.

Though the evidence does suggest that plaintiff's supervisors subjected her to some degree of disparate enforcement of the timekeeping policy, there is no indication as to the frequency with which such scrutiny occurred. Assuming that such incidents occurred frequently, scrutiny by a supervisor, even when combined with isolated racist remarks by coworkers, is not the type of offensive and abusive conduct that creates a hostile work environment. See <u>Sanchez v. City of Santa Ana</u>, 936 F.2d 1027 (9th Cir. 1990) (upholding a directed verdict for defendant despite allegations that the plaintiffs were subjected to the posting of racist cartoons, various racial slurs, ostracism by coworkers, and unequal enforcement of work policies).

Accordingly, no genuine issue of material fact exists

---

[9]     Although this latter comment may not form a basis for plaintiff's claim of hostile working environment based on race, it is relevant to her claim of retaliation as discussed later in this memorandum.

concerning the allegations of a hostile work environment, and the court must grant summary judgment in favor of defendants on plaintiff's first and second claims with respect to such allegations.

   C.   Retaliation for Complaints about Discrimination

        "Employers may not retaliate against employees who have 'opposed any practice made an unlawful employment practice' by Title VII." Davis v. Team Elec. Co., 520 F.3d 1080, 1093 (9th Cir. 2008) (citing 42 U.S.C. § 2000e-3(a)). Retaliation claims under Title VII and FEHA are also subject to the McDonnell Douglas burden-shifting analysis. See id. at 1088-89; Loggins v. Kaiser Permanente Int'l, 151 Cal. App. 4th 1102, 1108-09 (2007). To demonstrate a prima facie case of retaliation, plaintiff "must put forth evidence sufficient to show that 1) she engaged in a protected activity, 2) she suffered an adverse employment action, and 3) there was a causal link between her activity and the employment decision." Raad v. Fairbanks N. Star Borough Sch. Dist., 323 F.3d 1185, 1197 (9th Cir. 2003).

        Plaintiff has submitted sufficient evidence to establish her prima facie case. First, plaintiff engaged in protected activity at least four times. In May 2001, plaintiff filed a charge of discrimination with the City, alleging racial discrimination. (See Pl.'s App'x Ex. 10; Hodgkins Dep. 39:9-16; Franklin Decl. ¶ 49.) Then, following Buer's reassignment of management of the American River Flood Plain Announcement to Gualco, plaintiff engaged in protected activity when she informed Buer that she believed racial discrimination played a role in his decision. (Buer Dep. 85:1-8; Franklin Decl. ¶ 116.) See Ray v.

Henderson, 217 F.3d 1234, 1240 n.3 (9th Cir. 2000) (recognizing that making an informal complaint to a supervisor qualifies as a protected activity) (citing E.E.O.C. v. Hacienda Hotel, 881 F.2d 1504, 1514 (9th Cir. 1989)). Plaintiff similarly accused Buer of discrimination in response to his evaluation in August 2006. (See Defs.' App'x Ex. R at 6.) Finally, plaintiff sent a courtesy copy of a formal complaint alleging racial discrimination to Buer by email on November 2, 2006. (Pl.'s App'x Ex. 13; Franklin Decl. ¶ 148.)

With regard to the second element of the prima facie case, an action qualifies as an "adverse employment action" for purposes of a retaliation claim "if it is reasonably likely to deter employees from engaging in protected activity." Ray, 217 F.3d at 1243. The adverse employment actions established under plaintiff's prima facie case of for racial discrimination--her termination and compensation reductions--also qualify as adverse employment actions for the purposes of her retaliation claims.

As for the final element of plaintiff's prima facie case, a "causal link" between a protected activity and an adverse employment action "may be established by an inference derived from circumstantial evidence, 'such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision.'" Jordan v. Clark, 847 F.2d 1368, 1376 (9th Cir. 1988) (quoting Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987)).

As for plaintiff's termination, the close proximity between her termination on November 8, 2006, and the

discrimination complaints in August and November 2006 is
sufficient to establish a causal connection for the purposes of
her prima facie case.  See Yartzoff, 809 F.2d at 1378 (inferring
a causal connection when an adverse employment action occurred
less than three months after protected activity).  With regard to
plaintiff's compensation reductions, the evidence sufficiently
suggests a causal link.  Plaintiff's first protected activity
occurred early in May 2001, and her supervisor Hodgkins had
knowledge of the activity by June 2001 when he began scrutinizing
her time sheets.  (Hodgkins Dep. 40:17-23; Franklin Decl. ¶ 31.)

Plaintiff has thus established her prima facie case,
and in response, defendants put forth the same reasons for those
adverse employment actions as with plaintiff's racial
discrimination claims.  (See Defs.' Mem. Supp. Summ. J. 22:12-
13.)  As with plaintiff's discrimination claims, the evidence in
support of the reasons for plaintiff's compensation reductions
fails to address why Hodgkins subjected her to unequal
timekeeping rules, as described by plaintiff's prima facie case.
Therefore, genuine issue of material fact exists as to the
retaliatory intent motivating plaintiff's compensation
reductions.

With respect to her termination, the evidence also
sufficiently raises a genuine issue of material fact as to
whether defendants' stated reasons for plaintiff's termination
are pretextual.  As described earlier, see supra section B.1,
plaintiff has indirectly challenged defendants' reasons with
evidence of her competence.  (See Taylor Dep. 52:8-13.)  More
importantly, Buer's statement to plaintiff that he could not work

with someone who filed a racial discrimination claim against him (Franklin Decl. ¶ 77) here provides evidence relevant to the retaliatory intent behind plaintiff's termination.  Though two years earlier, Buer's statement is not simply a "stray remark . . . uttered in an ambivalent manner" too remote to raise an inference of prohibited intent.  Nesbit v. Pepsico, Inc., 994 F.2d 703, 705 (9th Cir. 1993).  Buer made this statement to plaintiff in direct response to learning of her prior discrimination complaint against Hodgkins.  Given that Buer himself made the subsequent decision to terminate plaintiff, a reasonable fact finder crediting plaintiff's evidence could infer retaliatory intent.  Finally, the close proximity between plaintiff's transmission of a formal complaint to Buer and her termination provides further evidence that defendants' stated reasons for plaintiff's termination are pretextual.  See Bell v. Clackamas County, 341 F.3d 858, 866 (9th Cir. 2003) (holding that the jury could have reasonably inferred retaliatory intent when, among other evidence, an adverse action was set in motion four days after a protected activity).

Accordingly, a genuine issue of material fact exists concerning the retaliatory intent behind the adverse employment actions taken against plaintiff, and the court must deny defendants' motion for summary judgment on plaintiff's third and fourth claims for retaliation.

D.    Failure to Prevent Discrimination/Retaliation

An employer "must take all reasonable steps necessary to prevent discrimination and harassment from occurring."  Cal. Gov't Code § 12940(k).  Such measures include prompt

23

investigation of discrimination claims and the establishment of anti-discrimination policies in the workplace.  See Cal. Fair Employment & Housing Comm'n v. Gemini Aluminum Corp., 122 Cal. App. 4th 1004, 1024-25 (2004).  An employer's obligation to prevent discrimination includes the duty to prevent retaliation for protected activity.  Taylor v. City of L.A. Dep't of Water & Power, 144 Cal. App. 4th 1216, 1240 (2006).

Defendants have not carried their initial burden on summary judgment of establishing the absence of a genuine issue of material fact.  They argue only that in the absence of any discrimination or retaliation, they cannot be held liable under Section 12940(k).  (Defs.' Mem. Supp. Summ. J. 23:19-22.)  As discussed earlier, however, there are genuine issues of material fact regarding plaintiff's discrimination and retaliation claims. Furthermore, the evidence would support an inference that SAFCA and the City did not take all reasonable steps to prevent discrimination, as they never implemented the cultural diversity classes ordered in the mediation following plaintiff's first claim of discrimination.  (Franklin Decl. ¶ 53.)

Accordingly, the court must deny defendants' motion for summary judgment on plaintiff's fifth claim for relief.

E.    Failure to Pay Wages

Under both the FLSA and the California Labor Code, employers must ordinarily pay non-exempt employees time-and-a-half for work in excess of forty hours per week.  See Clark v. United Emergency Animal Clinic, Inc., 390 F.3d 1124, 1125-26 (9th Cir. 2004) (citing 29 U.S.C. § 207(a)(1)); Conley v. PG&E Co., 131 Cal. App. 4th 260, 266 (2005) (citing Cal. Lab. Code §§ 510,

24

515).  Defendants contend that plaintiff qualified as an exempt administrative employee pursuant to 29 U.S.C. § 213(a)(1). (Defs.' Mem. Supp. Summ. J. 26:16.)

When an employer claims an exemption from the FLSA's overtime provisions, the employer bears the burden of showing that the exemption applies.[10]  <u>Bothell v. Phase Metrics, Inc.</u>, 299 F.3d 1120, 1124 (9th Cir. 2002) (citing <u>Donovan v. Nekton, Inc.</u>, 703 F.2d 1148, 1151 (9th Cir. 1983)).  Moreover, "'FLSA exemptions are to be narrowly construed against . . . employers and are to be withheld except as to persons plainly and unmistakenly within their terms and spirit.'"  <u>Webster v. Pub. Sch. Employees of Wash., Inc.</u>, 247 F.3d 910, 914 (quoting <u>Klem v. County of Santa Clara</u>, 208 F.3d 1085, 1089 (9th Cir. 2000)) (alterations in original).

Ordinarily, an employee qualifies for the administrative exemption if the employee is compensated on "a salary or fee basis," the employee's "primary duty" involves the performance of non-manual work related to the employer's "general business operations," and the employee exercises "discretion and independent judgment."  29 C.F.R. § 541.200 (2006); <u>accord</u> <u>In re Farmers Ins. Exch.</u>, 481 F.3d 1119, 1127 (9th Cir. 2007).

Given the evidence in this case, disputed issues of material fact exist as to whether plaintiff qualified as an exempt employee.  Accordingly, the court must deny summary judgment for defendants on plaintiff's claims for failure to pay

---

[10]    California law on exempt employees follows federal standards.  <u>Serv. Employees Int'l Union, Local 250 v. Colcord</u>, 160 Cal. App. 4th 362, 370 n.5 (2008).

wages.

F.  <u>Retaliation for Complaints about the Failure to Pay</u>
<u>Wages</u>

Plaintiff's eighth and ninth claims allege retaliation for complaints about wages in violation of state and federal law, respectively.  The anti-retaliation provision of the FLSA, 29 U.S.C. § 215(a)(3), prohibits retaliation against employees who have filed complaints or otherwise complained to their employers concerning violations of the FLSA.  <u>Williamson v. Gen. Dynamics Corp.</u>, 208 F.3d 1144, 1151 (9th Cir. 2000) (citing <u>Lambert v. Ackerley</u>, 180 F.3d 997, 1004 (9th Cir. 1999) (en banc)).  Retaliation claims under the FLSA are subject to the same burden-shifting analysis for retaliation claims under Title VII.  <u>Conner v. Schnuck Markets, Inc.</u>, 121 F.3d 1390, 1394 (10th Cir. 1997).

The California Labor Code similarly provides that "[n]o person shall discharge an employee . . . because the employee . . . has filed a bona fide complaint or claim . . . under or relating to his or her rights, which are under the jurisdiction of the Labor Commissioner."  Cal. Lab. Code § 98.6.  Though the parties have not identified, nor is the court aware of, applicable law on the elements or methods of proof of a claim for retaliation under section 98.6 of the California Labor Code, since California law tracks federal standards in other areas of labor law, <u>see</u> <u>Serv. Employees Int'l Union, Local 250 v. Colcord</u>, 160 Cal. App. 4th 362, 370 (2008) (noting that the Industrial Welfare Commission and Division of Labor Standards Enforcement follow federal standards), the court will apply the same analysis to plaintiff's state law claim.

Plaintiff has established her prima facie case of retaliation for complaints about the failure to pay wages.  She engaged in protected activity by sending Buer a courtesy copy of her formal complaint containing allegations of wage violations (see Pl.'s App'x Ex. 13), and she was terminated, an adverse employment action, a mere six days later.  Furthermore, given the close proximity between plaintiff's termination and the first time Buer learned of her complaint about wage violations, a reasonable fact finder could infer that retaliatory intent more likely motivated Buer than the reasons articulated by defendants.  See Miller v. Fairchild Indust., Inc., 797 F.2d 727, 731-32 (9th Cir. 1986) (reversing the district court and finding that evidence of a retaliatory action taken two months after employer learned of protected activity was sufficient to raise a genuine question of fact).  Plaintiff has therefore submitted sufficient evidence of retaliatory intent to create a genuine issue of material fact.

Defendants nonetheless contend that plaintiff's eighth claim under the California Labor Code fails because plaintiff did not comply with the provisions of the California Government Claims Act, which provides that a plaintiff with a claim for money damages against a public entity must first present that claim to the entity before bringing suit.  See Lozada v. City & County of S.F., 145 Cal. App. 4th 1139, 1150-51 (2006) (citing Cal. Gov't Code §§ 905, 911.2, 945.4).  The parties do not dispute that plaintiff did not first present such a claim to defendants.  However, California Government Code section 905(c) provides an exception to the general requirement of presentment

for "claims by public employees for fees, salaries, wages, mileage, or other expenses and allowances." The parties did not address in their briefs the applicability of this exception to plaintiff's claim for retaliation under the California Labor Code and only expressed uncertainty at oral argument about whether it applies. The court will consequently assume without deciding, for the purposes of summary judgment, that the exception provided by California Government Code section 905(c) applies to plaintiff's eighth claim for relief.

Accordingly, the court must deny summary judgment in favor of defendants on plaintiff's claims of retaliation for complaints about the failure to pay wages.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment be, and the same hereby is GRANTED in part as to plaintiff's first and second claims for racial discrimination with respect to her termination and hostile work environment allegations, and DENIED in all other respects.

DATED: March 21, 2009

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE