UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

MAGGIE FRANKLIN,                    NO. CIV. 07-1263 WBS GGH

          Plaintiff,
                                   AMENDED MEMORANDUM AND ORDER RE:
     v.                            MOTION FOR SUMMARY JUDGMENT

SACRAMENTO AREA FLOOD CONTROL
AGENCY, a public entity, CITY OF
SACRAMENTO, a public agency,

          Defendants.
_____/

----oo0oo----

          Plaintiff Maggie Franklin filed this action against

defendants Sacramento Area Flood Control Agency ("SAFCA") and the

City of Sacramento ("City") alleging racial discrimination,

retaliation, and wage violations during her tenure as the Public

Information Officer ("PIO") of SAFCA in violation of state and

federal law.  Currently before the court is defendants' motion

1

1  for summary judgment on all claims.[1]

2  I.  Factual and Procedural Background

3       In October 2000, plaintiff, who is African American,

4  moved from Toledo, Ohio, to California to start work as the PIO

5  of SAFCA.  (Defs.' App'x (Docket Nos. 37-48) Ex. B ("Hodgkins

6  Decl.") ¶ 2; Pl.'s App'x (Docket No. 54) Ex. 26 ("Franklin

7  Decl.") ¶ 10.)  SAFCA is a joint powers agency, created by the

8  City and other public entities, that partners with state and

9  federal agencies to construct levees and implement flood control

10 measures.  (Defs.' App'x Ex. A ("Buer Decl.") ¶ 1.)  When

11 plaintiff interviewed for her position and started work, Francis

12 "Butch" Hodgkins served as the Executive Director of SAFCA.

13 (Hodgkins Decl. ¶ 1.)

14      SAFCA is a fairly small agency consisting of about

15 twelve personnel (Buer Decl. ¶ 4), and plaintiff was the first

16 person to serve as PIO (see Hodgkins Decl. ¶ 6).  The PIO

17 position was created in 1999 by a contract between the City and

18 SAFCA in which the City agreed to establish a position on its

19 payroll to be filled by a candidate of SAFCA's choosing.  (See

20

21

22  ─────────────────

23        [1]   The court notes that the original Complaint also
   asserted claims against individuals Stein Buer and Julie Lienert,
   who shared the same counsel as the City and SAFCA.  (See Docket
24 No. 1.)  In contrast, the First Amended Complaint ("FAC")--the
   operative complaint--no longer lists these individuals in the
25 caption of the case or asserts claims against them.  (See FAC.)
   These individuals, however, do not appear to have been formally
26 dismissed from the action.  Nevertheless, because the FAC no
   longer asserts claims against them, and the instant motion
27 appears to be made only on behalf of the City and SAFCA (see
   Defs.' Mem. Supp. Summ. J. i:6-7), all references to "defendants"
28 in this Order are to the City and SAFCA only.

Defs.' Ex. H ("PIO Agreement") § 1; Hodgkins Decl. ¶ 3.)[2] The PIO Agreement provided that the PIO would be a SAFCA employee for all purposes except payment and benefits, that SAFCA would provide supervision and work space, and that the SAFCA Executive Director would determine the PIO's exact compensation within City ranges and steps. (PIO Agreement §§ 1, 3.)

As PIO, plaintiff organized and coordinated SAFCA's public communications plan, and her responsibilities included tasks such as making presentations to community groups, designing and maintaining the website, and organizing community events. (Franklin Decl. ¶ 61; Buer Decl. ¶ 8.) At some point early in plaintiff's employment, Hodgkins decided that she would manage only SAFCA's community relations, while all government relations duties would be assigned to an outside consultant, Barbara Gualco (Pl.'s App'x Ex. 23 ("Hodgkins Dep.") 17:18-25), who is not African American (Franklin Decl. ¶ 58).

[2]    Plaintiff has filed one-hundred and defendants have filed sixteen purported evidentiary objections to the materials submitted in support of the parties' respective positions. The bulk of these so-called objections are frivolous and do not even raise cognizable arguments under the Federal Rules of Evidence, and many consist simply of argument on the merits of the motion. (See, e.g., Pl.'s Objections No. 36 (objecting to declarant's statement on the grounds that it is based on the declarant's "unlawfully discriminatory beliefs"); id. No. 67 (objecting to declarant's statement as "demonstrably false").) To the extent that the objections concern evidence not relied upon, they are moot. The court will address only those specific objections raising cognizable evidentiary objections to material relied upon in the court's analysis.
    Here, plaintiff objects to the PIO Agreement on the grounds of lack of foundation and hearsay. (Pl.'s Objection No. 90.) The objection is overruled. Hodgkins, who signed the Agreement, had sufficient familiarity with the document to lay a proper foundation. (Hodgkins Decl. ¶ 3.) The contract is not hearsay as it is only considered as evidence of a promise, not for the truth of the matters asserted therein.

Shortly after she began work at SAFCA, plaintiff objected to the language used in the office. She complained to Hodgkins about the pervasive use of profanity by SAFCA personnel, including by Hodgkins himself. (Id. ¶ 28.) Hodgkins agreed to address this issue, but plaintiff did not observe a significant reduction. (Id. ¶¶ 29-30.) In addition, plaintiff, the only African American at SAFCA for the entirety of her employment (id. ¶ 2), alleges that she overheard Julie Lienert, the Director of Administration, refer to her as a "black bitch" on one occasion.[3] (Franklin Dep. 88:10-11.) Lienert also allegedly once called plaintiff a "lazy nigger" outside of plaintiff's presence, though the specific timing of the statement is not clear. (See Pl.'s App'x Ex. 24 ("Squaglia Dep.") 18:19-19:8 (testifying that the statement was made some time between May 2002 and April 2003).)

At the end of plaintiff's first six months, Hodgkins conducted an evaluation of plaintiff in which he told her that she "did not fit in," and he denied her the six-month raise described to her at the time of her hiring. (Franklin Decl. ¶¶ 42-48; Pl.'s App'x Ex. 7 at 1; Hodgkins Dep. 72:12-14.) In response, plaintiff filed a charge of discrimination with the City on May 18, 2001, alleging that Hodgkins and Lienert subjected her to race discrimination. (Pl.'s App'x Ex. 10 at 1-2.) As a result of a mediation between plaintiff and Hodgkins, Hodgkins agreed to award plaintiff her six-month raise and to

---

[3] Lienert appears to have held a position above plaintiff, as the original PIO duty statement indicated that the PIO would report to the Director of Administration in the absence of an Executive Director. (Pl.'s App'x Ex. 2 at 1.) Plaintiff states, however, that she never understood Lienert to be her supervisor. (Franklin Dep. 70:5-7.)

hold cultural diversity training for the office. (See Franklin Decl. ¶ 50; Hodgkins Dep. 39:24-25, 70:15-18.) Plaintiff received the raise but Hodgkins never held the diversity training. (Franklin Decl. ¶¶ 51, 53.)

Thereafter, beginning in June 2001, Hodgkins required plaintiff to account for her time and submit time sheets to City payroll. (See id. ¶ 31.) Plaintiff had to complete time sheets for the duration of her employment, and she was docked either leave time or pay for partial-day absences. (See Franklin Dep. 135:17-22, 290:8-9.)

In July 2004, Stein Buer succeeded Hodgkins as the SAFCA Executive Director. (Buer Decl. ¶ 1.) Plaintiff mentioned the 2001 charge of discrimination to Buer at an introductory meeting and requested that Buer schedule the cultural diversity training. (Franklin Decl. ¶ 75.) Plaintiff alleges that Buer stated in that conversation that he could not work with someone who filed a claim of racial discrimination against him. (Id. ¶¶ 76-77.) When plaintiff responded that his statement sounded like retaliation, Buer purportedly said, "It's not retaliation, it is a fact." (Id. ¶¶ 78-79.) Buer also stated that he did not think it was his responsibility to hold the diversity training. (Franklin Dep. 116:3-5.)

Some time in the spring of 2005, plaintiff informally complained to Buer that she believed he was discriminating against her on account of race. (Franklin Decl. ¶¶ 104, 116.) The informal complaint concerned Buer's reassignment of the management of the American River Flood Plain Announcement, a significant public event involving Congressman Matsui, to Gualco.

(<u>Id.</u> ¶ 116; Buer Dep. 88:5-20.)  Buer responded that plaintiff
should make a formal charge if she believed he had discriminated
against her, but plaintiff did not file a formal complaint at
that time.  (Franklin Decl. ¶ 119; Buer Decl. ¶ 59.)

While working under Buer, plaintiff was excluded from
certain meetings at which SAFCA's public relations were
discussed.  (Franklin Dep. 148:2-7.)  In particular, plaintiff
was not invited to or not allowed to attend sixty to seventy
percent of manager-level meetings at the office, though she was
considered a manager.  (Buer Dep. 206:19-207:1; <u>see</u> Franklin Dep.
149:12-17.)  Buer also declined to invite plaintiff to high-level
"management coordination" meetings involving strategic planning
between SAFCA and other agencies.  (Buer Dep. 209:18-24.)  Buer
told plaintiff that her attendance at these meetings was not
necessary.  (Franklin Dep. 148:13-14; Buer Decl. ¶ 39.)

On August 3, 2006, Buer provided plaintiff with a
formal evaluation of her performance.  (Buer Decl. ¶¶ 30-31.)
Buer gave plaintiff a negative review, citing low-quality written
work, low productivity, and poor responsiveness to Buer's
assignments.  (<u>See</u> <u>id.</u> ¶ 32; Franklin Decl. ¶ 143; Defs.' App'x
Ex. P.)  Plaintiff disputed Buer's assessment and accused him in
her written response of racial discrimination.  (<u>See</u> Defs.' App'x
Ex. R at 6.)  Buer requested that the City investigate
plaintiff's allegations.  (Buer Decl. ¶ 34; Defs.' App'x Ex. Q.)[4]

---

[4]    The court overrules plaintiff's objection to the email
in which Buer requested the City's investigation on the grounds
of lack of foundation and hearsay.  (Pl.'s Objection No. 95.)
Buer, who wrote and sent the email, laid a proper foundation.
(Buer Decl. ¶ 34.)  The email is not hearsay, as it considered

The performance evaluation was finally completed in September, after Buer responded to plaintiff's written response to the initial evaluation. (Buer Decl. ¶¶ 36-37.)

Then, on November 2, plaintiff emailed Buer a "courtesy copy" of a purported California Department of Fair Employment and Housing ("DFEH") complaint alleging that Buer had discriminated and retaliated against her. (Pl.'s App'x Ex. 13; Defs.' App'x Ex. Z; Franklin Decl. ¶ 148.) Some time in late October or early November, Buer learned that the City's investigator concluded that he had not discriminated against plaintiff. (See Buer Decl. ¶ 51; Edmonson Decl. ¶ 5.)[5] Plaintiff was then terminated on November 8, 2006. (Buer Decl. ¶ 53; Franklin Decl. ¶ 168.) SAFCA did not hire a new PIO. (Buer Decl. ¶ 56.)

Plaintiff filed the instant action on June 26, 2007, and filed the FAC on June 16, 2008. The FAC asserts nine claims against SAFCA and the City. The first and second claims allege racial discrimination in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-2, and the Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940(a), respectively; the third and fourth claims allege retaliation for complaints

for the fact that it was sent, not for the truth of the assertions it contains.

[5] The court overrules plaintiff's objection to Buer's and Susan Edmonson's statements concerning the results of the investigation on the grounds of lack of personal knowledge, hearsay, and the best evidence rule. (Pl.'s Objection Nos. 46, 81.) Both declarants have personal knowledge of the results of the investigation. The results of the investigation and Buer's receipt of the news are not hearsay as they are only considered for timing purposes, not for the accuracy of the investigation. Moreover, because the statements are not considered to prove the contents of the investigation, the best evidence rule is not implicated.

7

about discrimination in violation of Title VII, 42 U.S.C. § 2000e-3, and FEHA, Cal. Gov't Code § 12940(h), respectively; the fifth claim alleges a failure to prevent discrimination or retaliation in violation of FEHA, Cal. Gov't Code § 12940(k); the sixth and seventh claims allege failure to pay wages in violation of the California Labor Code, Cal. Lab. Code §§ 510, 515, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1), respectively; and the eighth and ninth claims allege retaliation for complaints about the failure to pay wages in violation of the California Labor Code, Cal. Lab. Code § 98.6, and the FLSA, 29 U.S.C. § 215(a)(3), respectively.

Defendants initially moved for summary judgment on January 12, 2009. On March 23, the court issued an Order ("March 23 Order") granting in part and denying in part defendants' motion. See Franklin v. Sacramento Area Flood Control Agency, No. 07-1263, 2009 WL 799107 (E.D. Cal. Mar. 23, 2009). Thereafter, defendants filed a motion for reconsideration, raising new arguments not presented in the original motion, and plaintiff filed an opposition that expanded on the parties' arguments on summary judgment and introduced nearly 100 pages of new evidence. (See Defs.' Mem. Supp. Recons. (Docket No. 71); Pl.'s Opp'n Recons. (Docket No. 76); Pl.'s App'x Opp'n Recons. (Docket No. 78) ("Pl.'s 2d App'x"); Defs.' Reply Recons. (Docket No. 79).) Upon reconsideration, the court's March 23 Order is set aside, and the court rules as follows on defendants' motion for summary judgment on all claims.

II. Discussion

    A.    Standard of Review

8

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Id. at 256. On issues for which the ultimate burden of persuasion at trial lies with the nonmoving party, the moving party bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the nonmoving party's case or by demonstrating that the nonmoving party cannot produce evidence to support an essential element of its claim or defense. Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party carries its initial burden, the nonmoving party "may not rely merely on allegations or denials in its own pleading," but must go beyond the pleadings and, "by affidavits or as otherwise provided in [Rule 56,] set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Valandingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989). On those issues for which it will bear the ultimate burden of persuasion at trial, the nonmoving party "must produce

9

evidence to support its claim or defense." <u>Nissan Fire</u>, 210 F.3d at 1103.

In its inquiry, the court must view any inferences drawn from the underlying facts in the light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). The court also may not engage in credibility determinations or weigh the evidence, for these are jury functions. <u>Anderson</u>, 477 U.S. at 255.

B. <u>Racial Discrimination</u>

The parties have invoked the three-step burden-shifting framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). Claims pursuant to FEHA are subject to that same analysis. <u>Bradley v. Harcourt, Brace & Co.</u>, 104 F.3d 267, 270 (9th Cir. 1996); <u>see</u> <u>Guz v. Bechtel Nat. Inc.</u>, 24 Cal. 4th 317, 354 (2000) ("Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes.").[6]

Under the <u>McDonnell Douglas</u> framework, plaintiff must first establish a prima facie case showing that 1) she belongs to a protected class of persons; 2) she satisfactorily performed her job; 3) she suffered an adverse employment action; and 4) her employer treated her differently than similarly situated

---

[6] Though the parties have both chosen to employ the <u>McDonnell Douglas</u> framework for the purposes of this motion, that burden-shifting framework is simply "a useful 'tool to assist plaintiffs at the summary judgment stage.'" <u>McGinest v. GTE Serv. Corp.</u>, 360 F.3d 1103, 1122 (9th Cir. 2004) (quoting <u>Costa v. Desert Palace, Inc.</u>, 299 F.3d 838, 855 (9th Cir. 2002), <u>aff'd</u> 539 U.S. 90 (2003)). In the alternative, plaintiff may "simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated [defendants]." <u>Id.</u>

employees not of the same protected class.  Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing McDonnell Douglas, 411 U.S. at 802).  The degree of proof necessary to establish a prima face case is "minimal and does not even need to rise to the level of a preponderance of the evidence."  Lyons v. England, 307 F.3d 1092, 1112 (9th Cir. 2002).  Then, if plaintiff successfully establishes her prima facie case, the "burden of production, but not persuasion, [] shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action."  Chuang v. Univ. of Cal. Davis, 225 F.3d 1115, 1123-24 (9th Cir. 2000) (citing McDonnell Douglas, 411 U.S. at 802).

Finally, assuming the employer carries its burden, plaintiff "must [then] show that the articulated reason[s] [are] pretextual 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'"  Chuang, 225 F.3d at 1124 (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981)).  To satisfy this burden, plaintiff "must produce some evidence suggesting that [the employment action] was due in part or whole to discriminatory intent, and so must counter [defendants'] explanation."  McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1123 (9th Cir. 2004).

1.  <u>Prima Facie Case</u>

Here, defendants do not contest the first two elements of plaintiff's prima facie case.  It is undisputed that plaintiff, as an African American, belongs to a protected class.

11

In addition, plaintiff's own assertion of adequate performance and evidence of positive assessments from others in her field (Franklin Decl. ¶¶ 4, 32; Pl.'s App'x Ex. 28 ("Taylor Dep.") 52:8-13) satisfies the second element. See Aragon v. Republic Silver State Disposal, Inc., 292 F.3d 654, 660 (9th Cir. 2002) (holding that even an employee's self-assessment was sufficient to establish a prima facie case).

With respect to the third element of plaintiff's prima facie case, "an adverse employment action is one that 'materially affect[s] the compensation, terms, conditions, or privileges of . . . employment.'" Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008) (quoting Chuang, 225 F.3d at 1126) (alterations in original); see Fonseca v. Sysco Food Servs. of Ariz., Inc., 374 F.3d 840, 847 (9th Cir. 2004) ("We define 'adverse employment action' broadly." (citing Ray v. Henderson, 217 F.3d 1234, 1241 (9th Cir. 2000))). Plaintiff contends that she suffered multiple adverse employment actions. The court will address plaintiff's prima facie case for each in turn.

i. Termination

To satisfy the fourth element of a prima facie case for discriminatory termination, a plaintiff ordinarily must show that the employer sought a replacement following the termination. See Pejic v. Hughes Helicopters, Inc., 840 F.2d 667, 672 (9th Cir. 1988). The prima facie case, however, "[is] not intended to be an inflexible rule." Furnco Constr. Corp. v. Waters, 438 U.S. 567, 575 (1978). Instead, the prima facie case serves to "eliminate[] the most common nondiscriminatory reasons" for the adverse employment action. Burdine, 450 U.S. at 254. In Pejic,

for example, the court required the plaintiff to show that the employer sought a replacement as a means of "demonstrating a continued need for the same services and skills." 840 F.2d at 672.

Here, it is undisputed that SAFCA did not hire a new PIO. (Buer Decl. ¶ 56.) Nonetheless, plaintiff's former duties were reassigned to existing staff (id.), none of whom were African American (Franklin Decl. ¶ 2). In addition, even before plaintiff's termination, some of her duties had already been assigned to Gualco, who is also not African American. (Id. ¶ 58). Under these circumstances, plaintiff has adequately shown that SAFCA had a continuing need for the services she provided and that non-African-Americans provided those services following her termination. Plaintiff has thus established a prima facie case for her termination.

### ii. Compensation Reductions

Plaintiff contends that her supervisors subjected her to disparate timekeeping rules that reduced her compensation and leave time. (See Pl.'s Opp'n 25:3-9.) In particular, plaintiff was required to submit time sheets that accounted for partial-day absences during regular working hours, and her leave balances or her pay were reduced for that time. (Franklin Dep. 287:9-288:14.) In contrast, other managers did not have to similarly account for time spent out of the office. (Id. at 287:17-18, 288:7-14.)[7] Plaintiff stated in her deposition that enforcement

---

[7] The court overrules defendants' objection to plaintiff's testimony concerning other managers' timekeeping for lack of personal knowledge and lack of foundation. (Defs.'

of the disparate timekeeping policy began "almost since [she] started at SAFCA" (id. at 290:12-291:6) and was "continuous" throughout her employment (id. at 135:17).

Because some of the evidence of differential timekeeping specifically concerns the pre-July 2004 period during which Hodgkins served as Executive Director (e.g., Ceragioli Dep. 23:18-25, 65:20-25, 35:3-5; Franklin Decl. ¶ 31), defendants argue that plaintiff's claims based on compensation reductions that occurred during Hodgkins' tenure are time-barred for failure to file a timely administrative complaint. (Defs.' Mem. Supp. Recons. 3:16-22; Defs.' Reply 14:2-4.) Under both Title VII and FEHA, an employee must first file an administrative complaint before filing suit. See Douglas v. Cal. Dep't of Youth Auth., 271 F.3d 812, 823 n.12 (9th Cir. 2001) ("Filing a timely charge [with the Equal Employment Opportunity Commission ("EEOC")] is a statutory condition that must be satisfied before filing suit in federal court." (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982)); Dominguez v. Wash. Mut. Bank, 168 Cal. App. 4th 714, 720 (2008) ("A prerequisite to bringing a civil

Objections No. 3.)  The record indicates that defendants did not challenge plaintiff's statements at the time of the deposition. See 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2113 (2009) ("A party waives any objection, whether to the form of questions or answers or to other errors that might be obviated, removed, or cured if promptly presented, by failing to note the objection at the taking of the deposition."); see also Jerden v. Amstutz, 430 F.3d 1231, 1237 (9th Cir. 2005) ("[A]n objection to admission of evidence on foundational grounds must give the basis for objection in a timely way to permit the possibility of cure.").  Moreover, given that plaintiff's office was located next to the offices of the other managers (Franklin Dep. 149:10-12), plaintiff could reasonably have personal knowledge that her supervisors did not dock the pay of other managers or force them to similarly account for their time.

action under FEHA is the filing of an administrative complaint with [the Department of Fair Employment and Housing] . . . .").

Pursuant to Title VII, "[a]n individual must file charges of discrimination . . . within 180 days 'after the alleged unlawful employment practice occurred.'" Hulteen v. AT&T Corp., 498 F.3d 1001, 1018 (9th Cir. 2007) (O'Scannlain, J., dissenting) (quoting 42 U.S.C. § 2000e-5(e)(1)). If the employee, as here, initially instituted proceedings with a state or local agency, however, the period is extended to 300 days. See 42 U.S.C. § 2000e-5(e)(1); E.E.O.C. v. Hacienda Hotel, 881 F.2d 1504, 1514 (9th Cir. 1989) (holding that proceedings are considered initially instituted with the DFEH even when the EEOC first receives the complaint and then forwards copies of the complaint to the DFEH), overruled on other grounds by Burrell v. Star Nursery, Inc., 170 F.3d 951 (9th Cir. 1999). FEHA provides that an administrative complaint must be filed within one year after the violation occurred. Dominquez, 168 Cal. App. 4th at 720 (citing Cal. Gov't Code § 12960).

The parties agree that plaintiff filed a complaint with the EEOC on February 6, 2007, and the EEOC then forwarded the complaint on February 20 to the DFEH, which waived its jurisdiction.[8] (See Pl.'s App'x Ex. 12; Defs.' Mem. Supp.

--------

[8] The FAC alleges only that plaintiff filed a complaint with the EEOC on February 6, 2006. (FAC ¶ 20.) The evidence also shows that plaintiff sent a "courtesy copy" of a purported DFEH charge of discrimination to Buer on November 6, 2006. (Pl.'s App'x Ex. 13; Franklin Decl. ¶ 148.) Though plaintiff states in her declaration that she filed "a complaint of discrimination with the EEOC" at that time (Franklin Decl. ¶ 148 (emphasis added)), she does not provide any evidence that a complaint was actually filed. Unlike the evidence of the

Recons. 4:2-10; Pl.'s Opp'n Recons. 1:26-27.). Whether plaintiff's administrative complaint should be deemed filed with the EEOC on February 6 or February 20 depends on whether the DFEH agreed to waive its right to a period of exclusive jurisdiction over this category of claims in the worksharing agreement between the EEOC and the DFEH. See 29 C.F.R. § 1601.13(a)(4)(ii) (providing that if the complaint on its face constitutes a charge within the category of charges over which the state agency has waived its right, then the charge is deemed filed with the EEOC upon receipt; otherwise, the charge is deemed filed on the date the state agency waives its right). While the worksharing agreement is not before the court, it appears from the case law that the DFEH has waived its period of exclusive jurisdiction for similar types of complaints. See Green v. L.A. County Superintendent of Schs., 883 F.2d 1472 (9th Cir. 1989); Hacienda Hotel, 881 F.2d at 1504; E.E.O.C. v. Willamette Indus., Inc., No. 90-606, 1991 WL 110208 (E.D. Cal. Mar. 25, 1991) (Coyle, C.J.); Downs v. Dep't of Water & Power, 58 Cal. App 4th 1093 (1997).

Because the distinction between a February 6 and 20 filing does not affect the court's analysis of the instant motion, for the purposes of summary judgment, the court will assume that the administrative complaint was deemed filed with the EEOC on February 6, 2007. Plaintiff thus filed a timely

complaint filed in February 2006, the "courtesy copy" did not indicate on its face that it had been filed with any agency. (Compare Pl.'s App'x Ex. 13, with id. Ex. 12, and Defs.' App'x Ex. Z.) There is thus insufficient evidence that any administrative complaint was filed before February 6, 2007. The court notes, though, that based on the timing of the adverse employment actions, the difference in the dates is not dispositive for the purposes of the instant motion.

administrative complaint for acts that occurred on or after April 12, 2006, for her Title VII claims, and February 6, 2006, for her FEHA claims.  See Paige v. California, 102 F.3d 1035, 1041 (9th Cir. 1996) (providing that because of the workshare agreement between the EEOC and the DFEH, "the filing of a charge with one agency is deemed to be a filing with both" (internal quotation marks omitted)).

Much of the evidence of alleged adverse employment actions in this case does not indicate the precise date on which the actions occurred.  Nevertheless, the statute of limitations is an affirmative defense such that "the defendant bears the burden of proving that the plaintiff filed beyond the limitations period."  Payan v. Aramark Mgmt. Servs. Ltd. P'ship, 495 F.3d 1119, 1112 (9th Cir. 2007).  Consequently, unless there is an absence of a genuine issue of material fact concerning whether any particular adverse employment action occurred within the statutory period, defendants are not entitled to summary judgment on their affirmative defense.  See Simoski v. Eaton Steel Bar Co., Inc., No. 04-74981, 2006 WL 752607, at *6 n.5 (E.D. Mich. Mar. 21, 2006) ("For the purposes of this Motion for Summary Judgment, Defendant has the initial burden to show the absence of a genuine issue of material fact.  Perhaps the incidents are time-barred, but Defendant has not demonstrated that to be the case.")

Because the evidence shows that the compensation reductions were continuous throughout plaintiff's employment (Franklin Dep. 135:17), a genuine issue exists as to whether some instances fell within the statutory period.  However, any

17

compensation reductions that occurred during Hodgkins' tenure, which ended in July 2004, are plainly time-barred unless--as plaintiff contends--the doctrine of continuing violations applies. (Pl.'s Opp'n Recons. 2:17-19.) Because the continuing violations doctrine is an exception to the statute of limitations defense, plaintiff bears the burden of proof on that issue. Davis v. Cal. Dep't of Corr., No. 93-1307, 1996 WL 271001, at *21 (Feb. 23, 1996) (Levi, J.).

For the purposes of a Title VII claim, the Supreme Court's decision in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), "substantially limit[s] the notion of continuing violations." Cherosky v. Henderson, 330 F.3d 1243, 1246 (9th Cir. 2003). Under Morgan, "'discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.'" Cherosky, 330 F.3d 1243, 1246 (9th Cir. 2003) (quoting Morgan, 536 U.S. at 122).[9] "Each discrete discriminatory act starts a new clock for filing charges alleging that act." Morgan, 536 U.S. at 113. Prior discrete acts may, however, be used "as background evidence in support of a timely claim." Id.

Here, each instance in which plaintiff was subject to discriminatory compensation reductions over the course of her

_____

[9]    In Morgan, the Supreme Court specifically rejected previous Ninth Circuit case law on continuing violations, which provided that if "one act falls within the charge filing period, discriminatory and retaliatory acts that are plausibly or sufficiently related to that act may also be considered for the purposes of liability." Morgan, 536 U.S. at 114.   In support of her continuing violation argument, plaintiff cites only case law that pre-dates Morgan, including the very Ninth Circuit decision reversed by Morgan. (See Pl.'s Opp'n Recons. 2:20-24.)

employment "constitutes a separate actionable unlawful employment practice," and therefore plaintiff's EEOC complaint was timely only for those "acts that occurred within the appropriate time period." Morgan, 536 U.S. at 114 (quotations omitted).  Even if the compensation reductions were part of an ongoing discriminatory policy against plaintiff by Hodgkins and Buer, defendants cannot be liable for discrete acts that occurred before August 15, 2006.  See Lyons, 307 F.3d at 1107 (discussing the impact of Morgan and explaining that "[an] assertion that the series of discrete acts flows from a company-wide, or systematic, discriminatory practice will not succeed in establishing the employer's liability for acts occurring outside the limitations period").

With regard to plaintiff's second claim under FEHA, California law provides a different standard for the continuing violations doctrine.  Under California law, "[a] continuing violation exists if: (1) the conduct occurring within the limitations period is similar in kind to the conduct that falls outside the period; (2) the conduct was reasonably frequent; and (3) it had not yet acquired a degree of permanence." Dominguez, 168 Cal. App. 4th at 721 (citing Richards v. CH2M Hill, Inc., 26 Cal. 4th 798, 823 (2001)).  Absent the cessation of the adverse actions or an employee's separation, conduct acquires "a degree of permanence" when "an employer's statements and actions make clear to a reasonable employee that any further efforts at informal conciliation . . . will be futile." Richards, 26 Cal. 4th at 823.

Here, plaintiff has not satisfied the third prong of

19

California's continuing violations standard. Plaintiff herself states that by the spring of 2005, she felt that discrimination complaints filed with the City would not be productive. (Franklin Decl. ¶ 115.) Consequently, she approached Buer directly with a complaint about discrimination following his reassignment of the American River Flood Plain Announcement to Gualco. (Id. ¶¶ 115-16.) Buer denied the allegations and directly informed plaintiff that she should make a formal charge if she felt he discriminated against her. (Id. ¶ 119). No reasonable jury could conclude that a reasonable employee in plaintiff's position would not have understood Buer's statements as a clear indication that informal conciliation would not remedy any existing adverse employment actions. Furthermore, even though the City did begin an internal investigation in August 2006, the compensation reductions challenged by defendants occurred years before, during Hodgkins' tenure. Therefore, at least by the spring of 2005, the compensation reductions had acquired the requisite "degree of permanence," Richards, 26 Cal. 4th at 823, and plaintiff's FEHA statutory clock began to run.

Accordingly, defendants are entitled to summary judgment in their favor on plaintiff's first and second claims for any compensation reductions that occurred under Hodgkins.

### iii. Reduction of Responsibilities

Plaintiff contends that she suffered discriminatory reductions in her responsibilities. (Pl.'s Opp'n 20:10.) Plaintiff's brief does not identify the instances supporting this contention, but presumably she refers to the assignment of responsibilities to Gualco. (See Franklin Decl. ¶ 118 ("I

20

believed that this transfer of responsibility [to Gualco] effectively completed the removal of Management functions of the SAFCA PIO . . . .").) Based on the evidence, it appears that plaintiff's supervisors decided to assign additional responsibilities to Gualco twice: Hodgkins assigned government relations responsibilities to Gualco early in plaintiff's employment (Hodgkins Dep. 17:18-25), and Buer reassigned management of the American River Flood Plain Announcement to Gualco in the spring of 2005 (Franklin Decl. ¶¶ 109-10).

Plaintiff's claims based on these reductions in responsibilities, the most recent of which occurred in 2005, occurred well outside the limitations period under both Title VII and FEHA. Since the reductions qualify as discrete acts of discrimination, the Title VII limitations period began to run when they occurred. <u>Morgan</u>, 536 U.S. at 113. In addition, plaintiff's claims are not protected by the continuing violations doctrine under state law, as the reductions became permanent when the last instance took place in 2005. <u>See</u> <u>Richards</u>, 26 Cal. 4th at 823.

Accordingly, defendants are entitled to summary judgment in their favor on plaintiff's first and second claims for discrimination based upon these reductions in her responsibilities.

iv. <u>Denial of Raises</u>

The evidence shows that plaintiff did not receive raises during her employment after her initial six-month raise even though she was hired with the expectation that she would be annually reviewed for raises on the anniversary of her start

21

date. (Franklin Decl. ¶ 90; Pl.'s App'x Ex. 7 at 1.) The last
instance occurred when Buer denied plaintiff a raise as part of
his formal evaluation of plaintiff completed in September 2006.
(Buer Decl. ¶ 37.) Discriminatory decisions materially affecting
compensation qualify as adverse employment actions. <u>Davis</u>, 520
F.3d at 1089. Plaintiff has thus established her prima facie
case for the September 2006 denial of a raise.

Defendants, however, cannot be held liable for any
denials of annual raises that occurred outside the limitations
period. Such denials, as discrete acts, are clearly time-barred
under Title VII, <u>see Morgan</u>, 536 U.S. at 114, and do not qualify
under California's continuing violations doctrine as they did not
occur "with reasonable frequency," <u>Dominguez</u>, 168 Cal. App. 4th
at 721.

Accordingly, defendants are entitled to summary
judgment in their favor on plaintiff's first and second claims
with respect to denials of raises outside the statutory period.

v.   <u>Denial of Conference Attendance</u>

In August and October 2006, Buer rejected plaintiff's
requests to attend public relations conferences, including two
that included professional training on developing communications
plans. (Defs.' App'x Exs. T, U; Buer Decl. ¶¶ 33, 40-41;
Franklin Decl. ¶¶ 123-24.) It appears that Hodgkins had
specifically promised plaintiff before she was hired that she
would be able to attend one all-expense-paid major conference
each year. (Pl.'s App'x Ex. 7 at 2.) In light of Hodgkin's
promises, Buer's rejection of plaintiff's request to attend these
conferences qualifies as an adverse employment action affecting

22

the terms and privileges of her employment.[10]

### vi. Exclusion from Meetings

The evidence shows that plaintiff was selectively excluded from a variety of meetings. Buer stated in his deposition that plaintiff was not invited or allowed to attend approximately sixty to seventy percent of the manager-level meetings. (Buer Dep. 206:19-207:1.) At some of these meetings, Gualco, the external public relations consultant, was invited to participate while plaintiff was not. (Franklin Dep. 165:23-166:2.) Buer also declined to invite plaintiff to high-level "management coordination" meetings between SAFCA and other agencies. (Buer Dep. 209:18-24.)

While mere exclusion from meetings may not always constitute an adverse employment action, when attendance at the meetings could have a material effect on the conditions of employment or compensation, exclusion can constitute an adverse employment action. See Ray, 217 F.3d 1234, 1243 (9th Cir. 2000) (noting that exclusion from meetings and seminars that would have made plaintiff eligible for salary increases qualifies as adverse employment action) (citing Strother v. S. Cal. Permanente Med.

---

[10] The court notes that, for the purposes of her prima facie case, plaintiff did not establish that non-African-American employees were not subject to the same denials of raises and conference attendance. Nevertheless, plaintiff may survive summary judgment simply by presenting evidence of discriminatory intent. See Costa, 299 F.3d at 855, aff'd, 539 U.S. 90 (2003) ("Evidence can be in the form of the McDonnell Douglas prima facie case, or other sufficient evidence--direct or circumstantial--of discriminatory intent." (citing U.S. Postal Serv. Bd. v. Aikens, 460 U.S. 711, 714 & n.3 (1983)). In this case, as described in Section II.B.2 infra, plaintiff has provided sufficient evidence of discriminatory intent with regard to Buer's reasons for denying plaintiff's raise and attendance at conferences.

*Group*, 79 F.3d 859, 869 (9th Cir. 1996)); <u>cf.</u> <u>Watson v. Paulson</u>, 578 F. Supp. 2d 554, 565 (S.D.N.Y. 2008) (holding that the plaintiff's exclusion from a staff meeting did not constitute an adverse employment action because it did not impact the performance of her duties or result in any material change in the terms and conditions of her employment).

In this case, plaintiff, whose duties included communicating information about SAFCA's programs to the public, was excluded from a large number of meetings while non-African-American managers were not. Given evidence that, in general, plaintiff found it difficult to obtain information about SAFCA programs that she needed for her job because other managers ignored her (Franklin Decl. ¶ 56), the evidence suggests that her exclusion from manager meetings and the inter-agency meetings impeded her ability to perform her duties. Accordingly, plaintiff has established a prima facie case for discrimination regarding her exclusion from meetings.

vii. <u>October 2006 Wage Deduction</u>

Some time in October 2006, the City deducted thirty-seven and one-half hours of pay from plaintiff's paycheck. (Defs.' App'x Ex. D ("Sutherland Decl.") ¶ 10.) The City deducted the pay based on plaintiff's earlier August time sheet in which plaintiff marked a week of absence, which exceeded her accrued paid leave time. (See <u>id.</u> ¶¶ 9-10.) The City did not process plaintiff's August time sheet, along with the time sheets of two other SAFCA workers, until October because the Accounting Division did not receive the time sheets from SAFCA until that time. (<u>Id.</u> ¶¶ 6-7.) Because the City did not receive the time

24

sheet from SAFCA in a timely fashion, plaintiff was fully paid in
August despite her absence. (Id. ¶ 6.) Plaintiff has not
identified evidence in connection with this incident. See S.
Cal. Gas. Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir.
2003) ("A party opposing summary judgment must direct our
attention to specific, triable facts. . . . General references
without page or line numbers are not sufficiently specific."
(citations omitted)).

While the category of adverse employment actions
broadly encompasses conduct that negatively affects an employee's
compensation--perhaps even including an employer's delay of
payment by a few days, see Fonseca v. Sysco Food Servs. of Ariz.,
Inc., 374 F.3d 840, 847 (9th Cir. 2004) (citing Univ. of Haw.
Prof'l Assembly v. Cayetano, 183 F.3d 1096, 1105-06 (9th Cir.
1999))--plaintiff's October 2006 delayed wage deduction does not
qualify as an adverse employment action. Plaintiff contends only
that the delay in submitting her time sheet was an adverse
action, not that the deduction itself was improper. (See Pl.'s
Opp'n 25:20-28.) The delay in submitting the time sheet alone
did not negatively affect plaintiff's compensation, as she would
not have been paid for that week's absence whether SAFCA
submitted her time sheet on time in August or later in October.[11]

Accordingly, defendants are entitled to summary
judgment on plaintiff's first and second claims of discrimination
regarding the October 2006 wage deduction.

---

[11] The issue of whether plaintiff's accrued leave time was
insufficient due to differential timekeeping policies is subsumed
in plaintiff's claim for discriminatory compensation reductions.

2. <u>Pretext</u>

Given plaintiff's prima facie case, the burden shifts to defendants to articulate legitimate reasons for the adverse employment actions. Defendants' articulated reasons are based largely on Buer's assessment that plaintiff lacked the initiative of an effective project manager, showed low productivity compared to other managers, and produced poor quality written work. (<u>See</u> Defs.' Mem. Supp. Summ. J. 17:19-23, 19:1, 19:25-26; Buer Decl. ¶¶ 20, 22-26.) Overall, Buer believed that plaintiff "provided very little value to SAFCA . . . [and] was an obstacle to its mission because of her poor performance and attitude." (Buer Decl. ¶ 28.) Specifically with respect to Buer's exclusion of plaintiff from certain meetings, defendants contend that Buer made a business decision not to invite plaintiff to certain meetings when she was not needed. (Defs.' Mem. Supp. Summ. J. 20:13-15; Buer Decl. ¶ 39.)

Under the <u>McDonnell Douglas</u> framework, the burden thus shifts back to plaintiff to identify evidence "suggesting that [the employment action] was due in part or whole to discriminatory intent, and so must counter [defendants'] explanation." <u>McGinest</u>, 360 F.3d at 1123. First, plaintiff has challenged defendants' articulated reasons as "unworthy of credence." <u>Chuang</u>, 225 F.3d at 1124. With regard to plaintiff's competence as PIO, James Taylor ("Taylor"), who worked as the chief of the public affairs office for the Army Corps of Engineers, thought plaintiff "did a very good job" as PIO of SAFCA. (Taylor Dep. 5:2-4; 52:8-9.) His office worked with plaintiff while she was PIO to set up at least four public

26

meetings and create the supporting brochures and fact sheets for
those meetings. (Id. at 39:11-17.) He stated that he would hire
plaintiff. (Id. at 56:16.) George Dukmejian, a public relations
consultant who worked with SAFCA from 2000-2007 and worked with
plaintiff, also stated by deposition that he never had any
complaints about plaintiff's work. (Pl.'s 2d App'x Ex.4 at 26:1-
2.) These positive assessments from others in plaintiff's field
provide some evidence that plaintiff performed well, despite
Buer's negative evaluations of her work.

With regard to plaintiff's exclusion from meetings,
Buer excluded plaintiff from meetings that appear to have
concerned matters within plaintiff's job responsibilities. As
PIO, plaintiff was not invited to multiple manager meetings
concerning SAFCA's public relations. (Franklin Dep. 148:2-7.)
In addition, Buer testified in his deposition that he did not
invite plaintiff to high-level inter-agency meetings even though
other agency's PIOs were invited. (See Buer Dep. 209:18-24.) A
reasonable jury could thus question the credibility of Buer's
purported business reasons for excluding plaintiff.

Second, plaintiffs have now presented evidence--not
previously submitted as part of the original summary judgment
motion--suggesting discriminatory intent motivated the adverse
employment actions. In particular, there is evidence that
Lienert, who purportedly called plaintiff a "lazy nigger" to
another coworker (Squaglia Dep. 18:19-22) and referred to
plaintiff as a "black bitch" (Franklin Dep. 88:10-11), provided
input to Buer regarding plaintiff's professional competence.
Buer stated in his deposition that Lienert specifically reported

27

to him on multiple occasions that plaintiff's job performance was inadequate. (Buer Dep. 126:5-23, 127:20-25.) For example, Lienert told him that plaintiff lagged significantly behind other managers in understanding and executing the budget formation process, a project Lienert appears to have directed. (Id. at 127:3-128:4.) Though Buer states that his assessment of plaintiff's performance was based on his own observations (Buer Decl. ¶ 19), reasonable inferences may be drawn that Lienert harbored racial animus toward plaintiff and that Lienert's biased complaints about plaintiff influenced Buer's assessment of plaintiff's performance and contributions to SAFCA.

A genuine issue of material fact therefore exists regarding whether discriminatory intent motivated the adverse employment actions in this case. See Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027, 1039-40 (9th Cir. 2005) ("Where . . . the person who exhibited discriminatory animus influenced or participated in the decisionmaking process, a reasonable factfinder could conclude that the animus affected the employment decision."); Shager v. Upjohn Co., 913 F.2d 398, 405 (7th Cir. 1990) (holding that summary judgment in favor of employer was not proper when a reasonable jury could infer from the evidence that a review committee's decision to terminate was tainted by biased and discriminatory portrayals of the plaintiff's performance); see also Galdamez v. Potter, 415 F.3d 1015, 1026 n.9 (9th Cir. 2005) ("Title VII may still be violated where the ultimate decision-maker, lacking individual discriminatory intent, takes an adverse employment action in reliance on factors affected by another decisionmaker's discriminatory animus.").

Accordingly, the court must deny defendants' motion for summary judgment on plaintiff's first and second claims for racial discrimination except as to compensation reductions that occurred under Hodgkins, reductions of responsibilities, denials of raises that occurred outside the statutory period, and the October 2006 wage deduction.

### 3. Hostile Work Environment

Plaintiff's first and second claims also allege that defendants subjected plaintiff to a hostile work environment on account of her race.[12] To prevail, plaintiff must show that 1) she was subjected to verbal or physical conduct of a racial nature, 2) the conduct was unwelcome, and 3) the conduct was sufficiently severe or pervasive to alter the conditions of the her employment and create an abusive work environment. <u>Vasquez v. County of Los Angeles</u>, 349 F.3d 634, 642 (9th Cir. 2003) (citing <u>Gregory v. Widnall</u>, 153 F.3d 1071, 1074 (9th Cir. 1998)).

To succeed on a hostile work environment claim, "'[t]he working environment must both subjectively and objectively be perceived as abusive.'" <u>Vasquez</u>, 349 F.3d at 642 (quoting <u>Brooks</u>

---

[12] Defendants argue that plaintiff has only alleged a claim for hostile work environment under Title VII, not FEHA. (Defs.' Reply 13 n.4.) They appear to base this argument on the fact that the second claim in the FAC cites California Government Code section 12940(a) (FAC 7:18) without also citing section 12940(j)(1), the subjsection that specifically prohibits employers from "harass[ing] an employee" because of race. Given that plaintiff's allegations in her second claim clearly state that she was "subjected to instances of hostile work environment," the court will not punish plaintiff merely because the FAC cites the wrong subsection of a statute. <u>See</u> <u>Finical v. Collections Unlimited, Inc.</u>, 65 F. Supp. 2d 1032, 1048 (D. Ariz. 1999) (holding that because of the liberal pleading standards in federal court, "summary judgment is [not] warranted when a plaintiff's counsel correctly identifies the legal theory[ ]but incorrectly cites the statute on which the theory is based").

v. City of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000)). In this analysis, the court may consider factors such as "the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 22 (1993).

The evidence not previously submitted to the court, when combined with the evidence considered on the original summary judgment motion, now creates a genuine issue of material fact as to whether plaintiff was subject to a hostile work environment. Plaintiff was subject to a variety of harassing conduct. The evidence suggests that she was consistently subject to differential enforcement of timekeeping policies as compared with other managers. (Franklin Dep. 135:17.) She was also repeatedly excluded from meetings involving the other managers in the office, even when those meetings included Gualco, the outside public relations consultant. (Buer Dep. 206:19-207:1; Franklin Dep. 148:2-15.) Buer also denied plaintiff's multiple requests to attend professional development conferences--opportunities that had been promised to her when she started as PIO. (Buer Decl. ¶¶ 33, 40-41; Franklin Decl. ¶¶ 124.) In addition, Lienert, who plaintiff once heard call her a "black bitch" (Franklin Dep. 88:10-11), instructed support staff to keep track of plaintiff's time in the office and remove plaintiff from the notification lists for certain manager meetings (id. at 146:24-

147:2, 148:16-22).[13]  As described earlier, a genuine issue of
material fact exists as to whether plaintiff suffered such
conduct on account of racial animus.

A reasonable jury could infer from this evidence that
these conditions were sufficiently severe or pervasive to alter
the conditions of plaintiff's employment and create an abusive
work environment.  Accordingly, defendants' motion for summary
judgment on plaintiff's claims for hostile work environment must
be denied.[14]

C.   Retaliation for Complaints about Discrimination

"Employers may not retaliate against employees who have
'opposed any practice made an unlawful employment practice' by
Title VII."  Davis, 520 F.3d at 1093 (citing 42 U.S.C. §
2000e-3(a)).  Retaliation claims under Title VII and FEHA are
also subject to the McDonnell Douglas burden-shifting analysis.
See id. at 1088-89; Loggins v. Kaiser Permanente Int'l, 151 Cal.
App. 4th 1102, 1108-09 (2007).  To demonstrate a prima facie case

[13]   To the extent that Lienert supervised plaintiff,
defendants may be held responsible for her conduct.  See Nichols
v. Azteca Rest. Enter., Inc., 256 F.3d 864, 877 (9th Cir. 2001).
Nevertheless, even if Franklin did not technically consider
Lienert her supervisor (Franklin Dep. 70:5-7.), defendants may
still be held liable for Lienert's conduct if they knew or should
have known of Lienert's harassment of plaintiff and did not take
adequate steps to address it.  McGinest, 360 F.3d at 1119 (citing
Swinton v. Potomac Cop., 270 F.3d 794, 803 (9th Cir. 2001).
Defendants were aware of at least some of Lienert's harassment,
since plaintiff filed her first claim of discrimination against
both Hodgkins and Lienert.  (See Pl.'s App'x Ex. 10 at 1-2.)
Moreover, neither Buer or anyone else with the authority to do so
ever ordered the diversity training agreed upon after plaintiff's
first claim of discrimination.  (Franklin Decl. ¶ 53.)
Accordingly, defendants may be held liable for hostile conditions
created by Lienert.

[14]   As described in Section II.B.1 supra, plaintiff is not
time-barred from filing claims based on this conduct.

31

of retaliation, plaintiff "must put forth evidence sufficient to show that 1) she engaged in a protected activity, 2) she suffered an adverse employment action, and 3) there was a causal link between her activity and the employment decision." <u>Raad v. Fairbanks N. Star Borough Sch. Dist.</u>, 323 F.3d 1185, 1197 (9th Cir. 2003).

1.    <u>Prima Facie Case</u>

Plaintiff has submitted sufficient evidence to establish her prima facie case of retaliation.  First, plaintiff engaged in protected activity at least four times.  In May 2001, plaintiff filed a charge of discrimination with the City, alleging racial discrimination.  (<u>See</u> Pl.'s App'x Ex. 10; Hodgkins Dep. 39:9-16; Franklin Decl. ¶ 49.)  Then, in the spring of 2005, plaintiff engaged in protected activity when she informed Buer that she believed racial discrimination played a role in his decision to assign management of the American River Flood Plain Announcement to Gualco.  (Buer Dep. 85:1-8; Franklin Decl. ¶ 116.)  <u>See</u> <u>Ray</u>, 217 F.3d at 1240 n.3 (recognizing that making an informal complaint to a supervisor qualifies as a protected activity) (citing <u>E.E.O.C. v. Hacienda Hotel</u>, 881 F.2d 1504, 1514 (9th Cir. 1989)).  Plaintiff similarly accused Buer of discrimination in August 2006 in response to his evaluation. (<u>See</u> Defs.' App'x Ex. R at 6; Buer Decl. ¶ 33.)  Finally, plaintiff sent a courtesy copy of an administrative complaint alleging racial discrimination to Buer by email on November 2, 2006.  (Pl.'s App'x Ex. 13; Franklin Decl. ¶ 148.)

With regard to the second element of the prima facie case, an action qualifies as an "adverse employment action" for

32

purposes of a retaliation claim "if it is reasonably likely to deter employees from engaging in protected activity." Ray, 217 F.3d at 1243. Because they affected compensation and the conditions of her employment, the alleged adverse employment actions established under plaintiff's prima facie case for racial discrimination also qualify as adverse employment actions for the purposes of her retaliation claims. The creation of a hostile work environment also qualifies as an adverse employment action for a retaliation claim. Id. at 1244-45. Just as with plaintiff's claims for discrimination, however, defendants are not liable for those adverse employment actions that occurred outside the limitations period.

As for the final element of plaintiff's prima facie case, a "causal link" between a protected activity and an adverse employment action "may be established by an inference derived from circumstantial evidence, 'such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision.'" Jordan v. Clark, 847 F.2d 1368, 1376 (9th Cir. 1988) (quoting Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987)). Plaintiff has established the requisite causal connection for her termination based on the close proximity between her termination on November 8, 2006, and the discrimination complaints in August and November 2006.

With regard to the other adverse employment actions, the denial of attendance the conferences and the denial of the raise both occurred in September 2006 (Buer Decl. ¶¶ 37, 40-41), just weeks after plaintiff accused Buer of discrimination in

August 2006.  See Yartzoff, 809 F.2d at 1376 (inferring a causal
connection when an adverse employment action occurred less than
three months after protected activity).  As for the acts
underlying plaintiff's alleged hostile work environment,
including the disparate compensation reductions and exclusions
from certain meetings, the conduct occurred regularly (see
Franklin Dep. 135:17 (stating that the differential timekeeping
enforcement was "continuous"), 165:19 (noting that the inter-
agency meetings from which plaintiff was excluded occurred
quarterly)), and certainly occurred after Buer had knowledge of
at least one instance of plaintiff's protected activity.[15]

Accordingly, plaintiff has established her prima facie
case of retaliation for complaints about discrimination.

2.  Pretext

In response to plaintiff's prima facie case, defendants
articulate the same non-discriminatory explanation for the
alleged adverse employment actions as previously offered--namely,
Buer's assessment that plaintiff performed poorly as PIO.  (See
Defs.' Mem. Supp. Summ. J. 22:12-13.)  Plaintiff again challenges
these explanations as "unworthy of credence" based upon evidence
of plaintiff's competence and Buer's exclusion of plaintiff from

_____

[15]     Given the lack of detail regarding the precise dates on
which some of the adverse employment actions occurred, the
inference of causation based on temporal proximity alone is
weaker.  However, as discussed earlier, the failure to
conclusively establish a prima facie case is not fatal, since
plaintiff may survive summary judgment by simply providing
evidence of retaliatory intent.  See Costa, 299 F.3d at 855,
aff'd 539 U.S. 90 (2003).  As described in section II.C.2 infra,
plaintiff has provided sufficient evidence of retaliatory intent
with regard to Buer's reasons for the differential timekeeping
policies and exclusion from meetings.

34

meetings that addressed issues relevant to her job functions.

Moreover, Buer's alleged statement to plaintiff that he could not work with someone who filed a racial discrimination claim against him (Franklin Decl. ¶ 77) provides direct evidence of Buer's retaliatory intent. Though Buer made the statement in 2004, it is not simply a "stray remark . . . uttered in an ambivalent manner," too remote to raise an inference of prohibited intent. Nesbit v. Pepsico, Inc., 994 F.2d 703, 705 (9th Cir. 1993). Buer made this statement to plaintiff in direct response to learning of her prior complaint of discrimination against Hodgkins. (Franklin Decl. ¶¶ 75-77.) Given that plaintiff suffered adverse employment actions after she accused Buer of discrimination, a reasonable fact finder crediting plaintiff's evidence could infer retaliatory intent from this statement. Finally, the close proximity between plaintiff's transmission of a formal complaint to Buer and her termination provides further evidence from which a jury could conclude that defendants' stated reasons specifically for plaintiff's termination are pretextual. See Bell v. Clackamas County, 341 F.3d 858, 866 (9th Cir. 2003) (holding that the jury could have reasonably inferred retaliatory intent when, among other evidence, an adverse action was set in motion four days after a protected activity).

Accordingly, because a genuine issue of material fact exists concerning the retaliatory intent behind the adverse employment actions taken against plaintiff, the court must deny defendants' motion for summary judgment on plaintiff's third and fourth claims for retaliation except as to compensation

reductions that occurred under Hodgkins, reductions of
responsibilities, denials of raises that occurred outside the
statutory period, and the October 2006 wage deduction.

     D.   <u>Failure to Prevent Discrimination/Retaliation</u>

An employer "must take all reasonable steps necessary
to prevent discrimination and harassment from occurring." Cal.
Gov't Code § 12940(k). Such measures include prompt
investigation of discrimination claims and the establishment of
anti-discrimination policies in the workplace. <u>See</u> <u>Cal. Fair</u>
<u>Employment & Housing Comm'n v. Gemini Aluminum Corp.</u>, 122 Cal.
App. 4th 1004, 1024-25 (2004). An employer's obligation to
prevent discrimination includes the duty to prevent retaliation
for protected activity. <u>Taylor v. City of L.A. Dep't of Water &</u>
<u>Power</u>, 144 Cal. App. 4th 1216, 1240 (2006).

Defendants have not carried their initial burden on
summary judgment of establishing the absence of a genuine issue
of material fact regarding whether they took all reasonable steps
to prevent discrimination. They argue only that in the absence
of any discrimination or retaliation, they cannot be held liable
under section 12940(k). (Defs.' Mem. Supp. Summ. J. 23:19-22.)
As discussed earlier, however, there are genuine issues of
material fact regarding whether defendants discriminated or
retaliated against plaintiff. Furthermore, the evidence would
support an inference that SAFCA and the City did not take all
reasonable steps to prevent discrimination, as they never
implemented the cultural diversity classes ordered in the
mediation following plaintiff's first claim of discrimination.
(Franklin Decl. ¶ 53.)

Accordingly, the court must deny defendants' motion for summary judgment as to plaintiff's fifth claim for relief.

### E. Failure to Pay Wages

Under both the FLSA and the California Labor Code, employers must ordinarily pay non-exempt employees time-and-a-half for work in excess of forty hours per week. See Clark v. United Emergency Animal Clinic, Inc., 390 F.3d 1124, 1125-26 (9th Cir. 2004) (citing 29 U.S.C. § 207(a)(1)); Conley v. PG&E Co., 131 Cal. App. 4th 260, 266 (2005) (citing Cal. Lab. Code §§ 510, 515). Defendants contend that plaintiff qualified as an exempt administrative employee pursuant to 29 U.S.C. § 213(a)(1).[16] (Defs.' Mem. Supp. Summ. J. 26:16.)

When an employer claims an exemption from the FLSA's overtime provisions, the employer bears the burden of showing that the exemption applies. Bothell v. Phase Metrics, Inc., 299 F.3d 1120, 1124 (9th Cir. 2002) (citing Donovan v. Nekton, Inc., 703 F.2d 1148, 1151 (9th Cir. 1983)). Moreover, "'FLSA exemptions are to be narrowly construed against . . . employers and are to be withheld except as to persons plainly and unmistakenly within their terms and spirit.'" Webster v. Pub. Sch. Employees of Wash., Inc., 247 F.3d 910, 914 (quoting Klem v. County of Santa Clara, 208 F.3d 1085, 1089 (9th Cir. 2000)) (alterations in original).

Ordinarily, an employee qualifies for the administrative exemption if the employee is compensated on "a

---

[16] In general, California law on exempt employees follows federal standards. Serv. Employees Int'l Union, Local 250 v. Colcord, 160 Cal. App. 4th 362, 370 n.5 (2008).

salary or fee basis," the employee's "primary duty" involves the
performance of non-manual work related to the employer's "general
business operations," and the employee exercises "discretion and
independent judgment." 29 C.F.R. § 541.200 (2006); accord In re
Farmers Ins. Exch., 481 F.3d 1119, 1127 (9th Cir. 2007). The
determination of whether plaintiff falls within this exemption
under both federal and state law requires a highly fact-intensive
inquiry into such matters as SAFCA's precise mission and services
and the nature and content of plaintiff's regular work. See,
e.g., Bothell, 299 F.3d at 1127-28 (reversing the district
court's grant of summary judgment in favor of employer because a
"fact-specific" inquiry was required to determine whether the
employee's actual daily tasks related to the employer's
"marketplace offerings" or to its general business operations);
Ho v. Ernst & Young LLP, No. 05-4867, 2009 WL 111729, at *4 (N.D.
Cal. Jan. 15, 2009) (applying California law and concluding that
a triable issue of fact existed as to whether an employee
exercised independent judgment when the evidence showed in part
that her supervisors determined the scope of her projects and
required her to frequently report back to them).

   The record contains only general descriptions of
plaintiff's responsibilities without providing details as to her
daily work. In light of the fact-specific inquiry required to
determine an employee's exempt status, defendants have failed in
their burden to show an absence of a genuine issue of material
fact as to whether plaintiff qualified under the administrative
exemption.

   Specific to plaintiff's sixth claim under the

38

California Labor Code, defendants argue that, regardless of whether plaintiff qualified as an exempt employee, the City is immune from liability for violations of the California Labor Code.[17] (Defs.' Mem. Supp. Summ. J. 24:13-25:10.)  The "home rule" doctrine, contained in article XI, section five of the California Constitution, "reserves to charter cities the right to adopt and enforce ordinances that conflict with general state laws, provided the subject of the regulation is a 'municipal affair' rather than one of 'statewide concern.'"  Horton v. City of Oakland, 82 Cal. App. 4th 580, 584-85 (2000) (citing Johnson v. Bradley, 4 Cal. 4th 389, 399 (1992)); see Sonoma County Org. of Pub. Employees v. County of Sonoma, 23 Cal. 3d 296, 315-16 (1979) ("It has long been settled that, insofar as a charter city legislates with regard to municipal affairs, its charter prevails over general state law.").  Before determining whether local law trumps a general state law, a court "must satisfy itself that the case presents an actual conflict between the two."  Cal. Fed. Sav. & Loan Ass'n v. City of Los Angeles, 54 Cal. 3d 1, 16 (1991).

When such a conflict exists between state law and a charter city's ordinances governing the wages paid to its employees, the charter city's ordinances prevail.  See Sonoma

---

[17]  Defendants contend that the City was plaintiff's sole employer, and thus plaintiff's Labor Code claims must be dismissed in their entirety if the City is immune to such claims. (Defs.' Mem. Supp. Summ. J. 25:1-10.)  Plaintiff responds that SAFCA and the City were in fact "dual employers."  (Pl.'s Opp'n 36:22-23.)  Neither party, however, has identified applicable law governing such distinctions.  Ultimately, the court need not reach this issue because, as described in this memorandum, defendants' motion must be denied even if the City qualifies as plaintiff's sole employer.

County, 23 Cal. 3d at 318 (holding that charter cities' and counties' salary ordinances and resolutions granting cost of living increases to employees prevail over a state law ban on those increases); Curcini v. County of Alameda, 164 Cal. App. 4th 629 (2008) (holding that the overtime provisions of the California Labor Code do not apply to chartered counties).

In this case, defendants have failed to show that the "home rule" doctrine demands dismissal of plaintiff's sixth claim because the evidence does not indicate an actual conflict between City legislation and the Labor Code's overtime provisions. For example, the evidence shows that plaintiff's pay was reduced for partial day absences (see Franklin Dep. 287:9-288:14), which is ordinarily inconsistent with an exempt status. See Kennedy v. Commonwealth Edison Co., 410 F.3d 365, 370 (7th Cir. 2005). The only evidence of legislation allegedly controlling the payment of plaintiff's compensation consists of the City Council resolution dated June 24, 2006. (See Defs.' App'x Ex. C ("Contreras Decl.") ¶ 3; Defs.' App'x Ex. AA ("Personnel Resolution") § 7.3.)[18] Plaintiff's reductions in pay for partial-day absences, however, began as early as June 2001 and continued throughout her employment. (See Franklin Decl ¶ 31; Franklin Dep. 135:17.) In the absence of evidence of applicable City legislation controlling compensation during all relevant instances of

---

[18] The court overrules plaintiff's objections to the Personnel Resolution on the grounds of lack of foundation and hearsay. (Pl.'s Objection Nos. 63-65.) Dorothea H. Contreras, the City Director of Labor Relations, sufficiently laid the foundation for a document that she uses in the course of her duties. (Contreras Decl. ¶ 3.) The Personnel Resolution qualifies for the business records exception to hearsay.

plaintiff's pay reductions, defendants have failed to "satisfy [the court] that th[is] case presents an actual conflict between" state and local law warranting application of the "home rule" doctrine. <u>Johnson v. Bradley</u>, 4 Cal. 4th at 398-99.[19]

Accordingly, genuine issues of material fact exist concerning plaintiff's claims for failure to pay wages, and the court must deny defendants' motion for summary judgment on plaintiff's sixth and seventh claims for relief.

> F. <u>Retaliation for Complaints about the Failure to Pay Wages</u>

Plaintiff's eighth and ninth claims allege retaliation for complaints about wages in violation of state and federal law, respectively. The anti-retaliation provision of the FLSA, 29 U.S.C. § 215(a)(3), prohibits retaliation against employees who have filed complaints or otherwise complained to their employers concerning violations of the FLSA. <u>Williamson v. Gen. Dynamics Corp.</u>, 208 F.3d 1144, 1151 (9th Cir. 2000) (citing <u>Lambert v. Ackerley</u>, 180 F.3d 997, 1004 (9th Cir. 1999) (en banc)). Retaliation claims under the FLSA are subject to the same burden-shifting analysis as retaliation claims under Title VII. <u>Conner v. Schnuck Markets, Inc.</u>, 121 F.3d 1390, 1394 (10th Cir. 1997).

---

[19] In addition, defendants argue that the applicable California Industrial Welfare Commission wage order exempts public employees like plaintiff from the Labor Code's overtime provisions. (Defs.' Reply 19:18-22 (citing Cal. Code Regs. tit. 8, § 11040, subd. 1(B)).) The cited wage order, however, only exempts certain public employees from the provisions of that order, not from the Labor Code itself. <u>See</u> Cal. Code Regs. tit. 8, § 11040, subd. 1(B) ("[T]he provisions of <u>this order</u> shall not apply to any employees directly employed by the State or any political subdivision thereof, including any city, county, or special district.") (emphasis added).

41

The California Labor Code similarly provides that "[n]o person shall discharge an employee . . . because the employee . . . has filed a bona fide complaint or claim . . . under or relating to his or her rights, which are under the jurisdiction of the Labor Commissioner." Cal. Lab. Code § 98.6. Though the parties have not identified, nor is the court aware of, applicable law on the elements or methods to prove a claim for retaliation under section 98.6 of the California Labor Code, the court will apply the same burden-shifting analysis to plaintiff's state law claim, since California law tracks federal standards in other areas of labor law, see Serv. Employees Int'l Union, Local 250 v. Colcord, 160 Cal. App. 4th 362, 370 (2008) (noting that the Industrial Welfare Commission and Division of Labor Standards Enforcement follow federal standards).

Plaintiff has established her prima facie case of retaliation for complaints about the failure to pay wages. She engaged in protected activity by sending Buer a copy of her administrative complaint on November 2, 2006, containing allegations of wage violations (see Pl.'s App'x Ex. 13), and she was terminated--an adverse employment action--a mere six days later. Furthermore, given the close proximity between plaintiff's termination and the first time Buer learned of her complaint about wage violations, a reasonable fact finder could infer that retaliatory intent more likely motivated Buer than the reasons articulated by defendants. See Miller v. Fairchild Indus., Inc., 797 F.2d 727, 731-32 (9th Cir. 1986) (reversing the district court and finding that evidence of a retaliatory action taken two months after employer learned of protected activity was

42

sufficient to raise a genuine question of fact).  Plaintiff has therefore submitted sufficient evidence of retaliatory intent to create a genuine issue of material fact.

Defendants nonetheless contend that plaintiff's eighth claim under the California Labor Code fails because plaintiff did not comply with provisions of the California Government Claims Act (Defs.' Reply 25:23-26), which provide that a plaintiff with a claim for money damages against a public entity must first present that claim to the entity before bringing suit.  <u>See</u> <u>Lozada v. City & County of San Francisco</u>, 145 Cal. App. 4th 1139, 1150-51 (2006) (citing Cal. Gov't Code §§ 905, 911.2, 945.4).  Though the parties have not addressed the issue, courts have long recognized that the California Government Claims Act does not apply to actions brought primarily for declaratory or injunctive relief even when the plaintiff also seeks incidental money damages.  <u>E.g.</u>, <u>Indep. Housing Servs. of S.F. v. Fillmore Ctr.</u> <u>Assocs.</u>, 840 F. Supp. 1328, 1358 (N.D. Cal. 1993); <u>Eureka</u> <u>Teacher's Ass'n v. Bd. of Ed.</u>, 202 Cal. App. 3d 469, 475 (1988); <u>Harris v. State Personnel Bd.</u>, 170 Cal App. 3d 639, 643 (1985), <u>abrogated on other grounds by</u> <u>City of Stockton v. Superior Court</u>, 42 Cal. 4th 730, 740 (2007); <u>Snipes v. City of Bakersfield</u>, 145 Cal. App. 3d 861, 870 (1983).  <u>But see</u> <u>Cal. Sch. Employees Ass'n</u> <u>v. Governing Bd. of S. Orange County Cmty. Coll. Dist.</u>, 124 Cal. App. 4th 574, 592 (2004) (questioning the statutory basis of the judicially recognized exception for incidental damages).

Here, based on her eighth claim for retaliation, plaintiff seeks injunctive relief in the form of an order commanding defendants to return her to her position of employment

43

with the "seniority, rights, opportunities, privileges, [and] accommodations" as if she had never been terminated. (FAC 14:7, 15:6-10.) She also seeks money damages, including lost wages and benefits and punitive damages. (Id. at 14:21-27; 15:11.) Under these circumstances, plaintiff's claims for money damages are merely incidental to her request for reinstatement, and therefore plaintiff was not required to satisfy the requirements of the California Government Claims Act with respect to her eighth claim for relief. See Eureka, 202 Cal. App. 3d at 475 (providing that plaintiff did not have to comply with the Government Claims Act because claims for back pay and fringe benefits were incidental to plaintiff's request for re-employment); Snipes, 145 Cal. App. 3d at 870 (holding that back pay and punitive damages were incidental to request for injunctive relief that plaintiff be hired and that defendant not discriminate against him).[20]

Accordingly, the court must deny summary judgment in favor of defendants on plaintiff's eighth and ninth claims for retaliation for complaints about the failure to pay wages.

///

///

---

[20] Plaintiff also argues that her eighth claim survives because SAFCA had not filed its required registration statement with the Roster of Public Agencies within seventy days of the accrual of her cause of action. See Cal. Gov't Code § 946.4(a)(1); Sunstone Behavioral Health, Inc. v. Alameda County Med. Ctr., No. 06-2664, 2007 WL 1219299, at *3 (E.D. Cal. Apr. 25, 2007) (Damrell, J.) ("'[T]he agency's failure to comply with [the requirement to file a registration statement] entitles the claimant to ignore the claim-filing requirement entirely.'" (quoting Wilson v. S.F. Redevelopment Agency, 19 Cal. 3d 555, 561 (1977))). Because the court finds that plaintiff was not obligated to comply with the Government Claims Act on other grounds, the court does not reach this issue.

44

III. Conclusion

       When moving for or opposing summary judgment in this
court, the parties should present all of the arguments and
affidavits or other exhibits which support their respective
positions.  Counsel have apparently been misled to believe that
it is a good practice to hold back some arguments and materials,
wait to see how the court rules, and then present those arguments
and materials in a motion for reconsideration if the court rules
against them the first time around.

       Summary judgment practice in this court differs
significantly from the practice in the state courts.  This
court's decisions are not intended as tentative rulings for
counsel to pick apart and seek to modify.  They are intended as
final decisions.  The attorneys should accordingly be aware that
in the future not all of their motions for reconsideration will
be favorably considered, particularly where, as here, they are
based on legal arguments or evidence not presented in their
original motion or opposition.

       If the parties had presented all of the materials filed
in support of and in opposition to this motion for
reconsideration when the motion for summary judgment was
originally briefed and heard, it would not have been necessary
for the court to set aside its original order and to enter this
one in its place.  This Memorandum and Order constitutes the
court's final decision on the motion for summary judgment, and no
further motions for reconsideration will be considered.

///

///

IT IS THEREFORE ORDERED that:

1) the court's March 23 Order is hereby SET ASIDE;

2) defendants' motion for summary judgment is GRANTED in part as to plaintiff's first, second, third, and fourth claims for relief with respect to compensation reductions that occurred under Hodgkins, reductions of responsibilities, denials of raises that occurred outside the statutory period, and the October 2006 wage deduction; and

3) defendants' motion for summary judgment is DENIED in all other respects.

DATED:  April 29, 2009

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE